Opinion issued March 1, 2007
















In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00350-CV

 __________


LOU VIRGINIA DANOS, INDIVIDUALLY AND AS NEXT FRIEND OF
RYAN COCHRAN, A MINOR, Appellant


V.


KEVIN RITTGER, M.D., Appellee






On Appeal from the 55th District Court

Harris County, Texas

Trial Court Cause No. 2005-34257






O P I N I O N

 In this medical malpractice suit, appellant, Lou Virginia Danos, individually
and as next friend of Ryan Cochran, a minor, appeals the trial court's granting of a
motion to dismiss filed on behalf of appellee, Kevin Rittger, M.D. Danos argues that,
contrary to the trial court's finding, the medical reports that she filed complied with
the requirements of section 74.351 of the Texas Civil Practice and Remedies Code. (1) 
 We affirm.

Background


 On May 30, 2003, Danos, who was 28-weeks pregnant with her second child,
went to St. John Hospital's emergency room complaining of right arm numbness. 
Rittger, the emergency room physician, obtained a CT scan of her head and called for
a consult by Danos's obstetrician, Dr. Victor Patel. Dr. Patel evaluated Danos and
ordered a neurological consult. Before the neurological consult, Patel discharged
Danos with a diagnosis of "generalized anxiety." Two days later, Danos went to
Memorial Hermann Hospital with weakness of her right upper and lower extremities. 
She was found to have a left middle cerebral artery ("MCA") stroke due to a clot at
the bifurcation of the left MCA. (2) 

 Danos sued Rittger and other healthcare providers for medical negligence. (3) 

 Pursuant to section 74.351, (4) Danos timely filed expert reports from Dave David,
M.D., an obstetrician, and Frank Baker, M.D., an emergency room physician. Dr.
David's report did not address the care provided by Rittger. Rittger objected to the
sufficiency of Baker's report and filed a motion to dismiss. The trial court ruled that
the report did not comply with section 74.351 and gave Danos 30 days to cure the
deficiency. (5) Within the 30 days, Danos filed a new report from Baker and filed a
report from John Meyer, M.D., a neurological expert not previously designated.

 The trial court found that Baker, although qualified to opine on the standard of
care and its breach, failed to show the nexus between the negligence and the injury. 
The trial court further found that, during the 30-day extension, Danos could not file
a report from a new expert. The trial court dismissed Danos's case and awarded
Rittger $10,000 in attorney's fees. 

Medical Expert Reports


 In her sole issue, Danos argues that the trial court erred in dismissing her case
because her experts' reports complied with the requirements of section 74.351. 
"Subsumed within that issue are challenges to (1) the qualifications of the doctors
who wrote the reports, (2) the timeliness of the reports, and (3) the legal sufficiency
of the reports."

Standard of Review

 We review all section 74.351 rulings under an abuse of discretion standard. 
Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001). A trial
court abuses its discretion if it acts in an arbitrary or unreasonable manner without
reference to guiding rules or principles. See Garcia v. Martinez, 988 S.W.2d 219,
222 (Tex. 1999). When reviewing matters committed to the trial court's discretion,
we may not substitute our own judgment for that of the trial court. Walker v. Packer,
827 S.W.2d 833, 839 (Tex. 1992). A trial court does not abuse its discretion merely
because it decides a discretionary matter differently than an appellate court would in
a similar circumstance. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985).

 Although we may defer to the trial court's factual determinations, we should
review questions of law de novo. Rittmer v. Garza, 65 S.W.3d 718, 722 (Tex.
App.--Houston [14th Dist.] 2001, no pet.). To the extent resolution of the issue
before the trial court requires interpretation of the statute itself, we must apply a de
novo standard. Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.--Houston [14th Dist.]
2004, no pet.).

 In reviewing whether an expert report complies with Chapter 74.351, we must
evaluate whether the report "represents a good-faith effort" to comply with the
statute. Strom v. Mem'l Hermann Hosp. Sys., 110 S.W.3d 216, 221 (Tex.
App.--Houston [1st Dist.] 2003, pet. denied). In making this evaluation, we must
look only at the information that is contained within the four corners of the report. 
Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002). 

Chapter 74 Expert Report Requirements 

 Pursuant to section 74.351, medical-malpractice plaintiffs must provide each
defendant physician and health care provider with an expert report or voluntarily
nonsuit the action. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351. If a claimant
timely furnishes an expert report, a defendant may file a motion challenging the
report's adequacy. See id. § 74.351(a). The trial court shall grant the motion only if
it appears, after hearing, that the report does not represent a good faith effort to
comply with the statutory definition of an expert report. See id. § 74.351(l ). The
statute defines an expert report as a written report by an expert that provides, as to
each defendant, a fair summary of the expert's opinions as of the date of the report
regarding: (1) applicable standards of care; (2) the manner in which the care provided
failed to meet the standards; and (3) the causal relationship between that failure and
the injury, harm, or damages claimed. See id. § 74.351(r)(6); Palacios, 46 S.W.3d
at 878-79.

 Although the report need not marshal all the plaintiff's proof, it must include
the expert's opinions on the three statutory elements--standard of care, breach, and
causation. See Palacios, 46 S.W.3d at 878-79; Gray v. CHCA Bayshore L.P., 189
S.W.3d 855, 858-59 (Tex. App.--Houston [1st Dist.] 2006, no pet.). In detailing
these elements, the report must provide enough information to fulfill two purposes
if it is to constitute a good faith effort. First, the report must inform the defendant of
the specific conduct the plaintiff has called into question. Palacios, 46 S.W.3d at
879. Second, the report must provide a basis for the trial court to conclude that the
claims have merit. Id. A report that merely states the expert's conclusions as to the
standard of care, breach, and causation does not fulfill these two purposes. Id. The
expert must explain the basis for his statements and must link his conclusions to the
facts. Bowie, 79 S.W.3d at 52. Furthermore, in assessing the report's sufficiency, the
trial court may not draw any inferences, and must instead rely exclusively on the
information contained within the report's four corners. See Palacios, 46 S.W.3d at
879.

 Unlike summary judgments, dismissals with prejudice occur early in litigation
because the expert report must be filed within 120 days of the filing of the original
petition. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). One purpose of the
statute was to reduce frivolous claims. Palacios, 46 S.W.3d at 878. 

Dr. Meyer

 Dr. Meyer's report was filed, for the first time, during the trial court's 30-day
extension. Rittger objected that Meyer's report was untimely filed because it was not
filed within 120 days of filing the petition. See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351. 

 When examining provisions within the Medical Liability Act, we must be
mindful of the comprehensive nature of the Act. See In re Tyler Asphalt & Gravel
Co., 107 S.W.3d 832, 840 (Tex. App.--Houston [14th Dist.] 2003, orig. proceeding). 
Section 74.351(c) provides that, "[i]f an expert report has not been served within the
period specified by Subsection (a) because elements of the report are found deficient,
the court may grant one 30-day extension to the claimant in order to cure the
deficiency." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). In contrast, the
predecessor to section 74.351 allowed "a grace period of 30 days to permit the
claimant to comply with that subsection." (Emphasis added.) See Act of May 5,
1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985-87 (adding expert
report requirement, at former Tex. Rev. Civ. Stat. art. 4590i, § 13.01(d)), repealed
and recodified as amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01,
10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 864, 884, 898-99 (House Bill 4)
(adopting chapter 74 of the Texas Civil Practice and Remedies Code, applicable only
to actions filed on or after September 1, 2003 and continuing prior law in effect for
actions filed before that date) (current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351). It is presumed that the legislature intended to make the change in the
language from a required 30-day extension to allow a claimant to "comply with the
subsection," to a discretionary 30-day extension to "cure the deficiency" in the
timely-filed expert report. See City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 681 (Tex. 1979) (when a statute is amended, the court should "endeavor
to effect the change" intended in the existing law). 

 Danos cites no authority for her proposition that, "[l]ogic, common sense, and
fair play suggest that . . . [new experts may cure the deficiency] because the
deficiency will often be in a [sic] area that the first doctor cannot or is not qualified
to address." Danos further argues that, "because the statute specifically allows
different doctors to opine on different issues, it is certainly consistent with the
obvious intent of the statute to allow a different doctor to cure the deficiency." The amended statute emphasizes the need to cure the deficiency in the report. 
Whereas, the predecessor statute emphasized giving the claimant an opportunity to
comply with the subsection. This is an important and significant alteration in the
statute. There is no provision in the statute that allows a claimant to go beyond the
120-day deadline to cure a deficiency in a report by obtaining a new report from a
different expert. 

 We hold that the trial court did not err in finding that Danos could not file a
report from Meyer, a new expert, during the 30-day extension. Having held that
Meyer's report was untimely filed, we need not address his qualifications to file the
report.

Dr. Baker

 With respect to Dr. Rittger, Dr. Baker's initial report alleged that

 Dr. Rittger and Dr. V. Patel deviated from the standard of care by failing
to diagnose TIA [transient ischemic attack] and by failing to admit the
patient for further evaluation and treatment of her TIA. That evaluation
should have initially consisted of laboratory work such as a CBC with
platelet count, prothrombin time, and partial thromboplastin time in an
effort to explore hypercoagulabile states, an echocardiogram looking for
cardiac sources of emboli, and a carotid Dopplar ultrasound to evaluate
the patient for carotid sources of emboli, and, if warranted, an
MRI/MRA for further evaluation. It is well-known that pregnancy
predisposes patients to thrombo-embolic phenomenon including TIA's
and strokes. This is because physiologic states associated with elevated
estrogen and progesterone levels such as pregnancy and the use of birth
control pills cause hypercoagulabile states that are associated with
increased clotting resulting in stokes [sic] and other thrombo-embolic
phenomenon. Failure to make the diagnosis of TIA and to formulate a
plan to treat Virginia Danos was a deviation from the standard of care
and causally related to her subsequent stroke.


 . . . .




 Within a reasonable degree of medical certainty, had she been admitted
and treated, her TIA would not have progressed to a left MCA stroke.


Rittger argued that the final "conclusory" paragraph above did not "set forth how the
stroke could have been avoided, what kind of treatment could have been done. It
doesn't connect the alleged negligence to the injuries or damages." The trial court
agreed that the report was deficient and gave Danos 30 days to cure the deficiency in
the report. 

 In the second report, Baker added the following paragraph:


 Virginia Danos was pregnant at the time of this incident, and because of
her pregnancy, she had elevated estrogen and progesterone levels. As
a direct result, she was predisposed to thrombo-embolic events including
TIA's and strokes. Dr. Rittger and Dr. V. Patel should have recognized
that she was predisposed to these thrombo-embolic events because of
her elevated estrogen and progesterone levels. High suspicions should
have led them to diagnose TIA which should have resulted in admission
for further evaluation and treatment. 


Rittger objected to the supplemental report because it did not address causation, did
not address Baker's "competence or qualifications to testify as to proximate cause,"
lumped the two physicians together, and simply set "forth more information about
why they should have suspected a stroke or some kind of neurological phenomenon
going on." The trial court found that Baker's supplemental report did not "show[] his
qualifications to offer a causation - to offer causation testimony or is sufficiently -
doesn't show the nexus. I don't think it sufficiently shows the nexus between the
alleged negligence and the injury." 

 Rittger concedes that Baker is qualified to testify regarding the standard of care
and breach, but asserts that he is not qualified to testify regarding causation. He
contends that "[a]lthough Dr. Baker, an emergency room physician, might have
relevant expertise in neurological issues in theory, nothing in his report or curriculum
vitae indicates he is qualified to testify as to proximate cause with respect to
neurological injuries." More specifically, nothing showed he was competent or
qualified to testify on the cause of neurological injuries suffered by a pregnant
patient, such as Danos.

 Baker's 22-page curriculum vitae was attached to his expert reports. While the
report illustrates significant training, teaching, and writing with respect to emergency
medicine, there is not one reference to neurology or neurological implications in an
emergency room setting. For that matter, of the hundreds of articles written and
lectures taught, only one pertained to pregnancy--"Lumpkin, J., Baker, F., Franaszek,
J.: Alcoholic Ketoacidosis in a Pregnant Woman. JACEP 8(1): 21. January 1979." 
We conclude that the trial court did not abuse its discretion in finding that Baker was
not qualified to opine on proximate cause. 

 A report that merely states the expert's conclusions about the standard of care,
breach, and causation is not sufficient. Palacios, 46 S.W.3d at 879. Furthermore, a
statement in a report that the plaintiff should have received different treatment and
was injured as a result is conclusory and dismissal is appropriate. See Eichelberger
v. St. Paul, 99 S.W.3d 636, 639 (Tex. App.--Dallas 2003, pet. denied). Baker does
not state anywhere in his report that any alleged act or omission of Rittger
proximately caused Danos's injuries or damages. The expert must address proximate
cause as to each defendant and provide some basis to conclude that an act or omission
of the defendant proximately caused the injury.

 An expert report "may not assert that multiple defendants are all negligent for
failing to meet the standard of care without providing an explanation of how each
defendant specifically breached the standard of care and how that breach caused or
contributed to the injury." Taylor v. Christus Spohn, 169 S.W.3d 241, 244 (Tex.
App.--Corpus Christi 2004, no pet.). In Taylor, the expert report stated that "it was
negligent for Dr. Wright, Team Health Southwest, and Spohn Hospital" to fail to
complete discharge procedures, among other things. Id. at 245. The court of appeals
affirmed dismissal, holding that the expert report was insufficient because "it fails to
specify each Defendant's individual negligent conduct." Id. 

 Baker's report does not address the specific allegations of negligence for the
emergency room physician (Rittger) as opposed to the obstetrical consult (Patel). In
essence, Baker complains of their collective failure to diagnose TIA and their
collective failure to admit Danos. Accordingly, we hold that Baker's reports do not
address causation. 

 We hold that the trial court did not abuse its discretion in finding Baker's
reports inadequate, and we overrule Danos's sole issue.

Conclusion


 We affirm the judgment of the trial court.



 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.


 
1. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2006).
2. The record does not indicate what, if any, permanent impairment Danos or her unborn
child suffered as a result of the stroke.
3. All defendants, except Rittger, were eventually nonsuited. 
4. Section74.351(a) provides as follows:


 In a health care liability claim, a claimant shall, not later than the 120th day
after the date the original petition was filed, serve on each party or the party's
attorney one or more expert reports, with a curriculum vitae of each expert
listed in the report for each physician or health care provider against whom a
liability claim is asserted. The date for serving the report may be extended by
written agreement of the affected parties. Each defendant physician or health
care provider whose conduct is implicated in a report must file and serve any
objection to the sufficiency of the report not later than the 21st day after the
date it was served, failing which all objections are waived.


 Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).
5. Section 74.351(c) provides, in pertinent part, as follows: "[i]f an expert report has not
been served within the period specified by Subsection (a) because elements of the
report are found deficient, the court may grant one 30-day extension to the claimant
in order to cure the deficiency." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c)
(Vernon Supp. 2006).