In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-240 CV


____________________



HERVY HINER, MARISA TURNER JOHNSON, H.H. HINER, P.C., AND


SOUTHEAST TEXAS NEPHROLOGY ASSOCIATES, P.A., Appellants



V.



LEE "PETE" BURNELL GASPARD, Appellee






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-178-245






MEMORANDUM OPINION



 In this medical malpractice lawsuit brought by appellee Lee "Pete" Burnell Gaspard,
appellants Hervy Hiner, M.D., Marisa Turner Johnson, M.D., H.H. Hiner, P.C., and
Southeast Texas Nephrology Associates, P.A. ("STNA") appeal the denial of their motion
challenging Gaspard's expert report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l)
(Vernon Supp. 2006). Appellants present three issues for our review. We affirm the trial
court's judgment.

Background


 Appellee Lee "Pete" Burnell Gaspard sued appellants Hervy Hiner, M.D., Marisa
Turner Johnson, M.D., H.H. Hiner, P.C., STNA, and other defendants for alleged medical
malpractice. Gaspard alleged that while he was undergoing dialysis via a skin graft on his
arm, the graft became infected, causing injury and permanent disability. Gaspard filed an
expert report by Juan Carlos Ayus, M.D., a specialist in nephrology and internal medicine.
In the report, Ayus stated that he knows the standard of care required of physicians practicing
under the same or similar circumstances as Hiner and Johnson. Ayus's report also explained
that although symptoms of an infection in Gaspard's graft developed on November 30, 2004,
and the infection was diagnosed on December 3, 2004, surgery to remove the graft was not
performed "until December 8, 2004, a full five days later." Ayus's report further stated that
"[t]he standard of care with regard to the treatment in a dialysis patient like Mr. Gaspard is
that immediately upon diagnosis of an infection you remove the source. You should
immediately have surgery at the AV graft to remove access for infection."

 Ayus's report explained as follows with respect to causation:

 If Mr. Gaspard ha[d] the graft removed immediately upon the diagnosis of an
infection, then the AV graft area that allows immediate access into the blood
stream would be stopped. The standard of care then is to culture the wound,
do blood work, and immediately get Mr. Gaspard on broad spectrum
antibiotics.


 In my opinion within a reasonable degree of medical probability, if Mr.
Gaspard had the surgery to remove the infected graft on December 3, 2004,
which should have been done considering his chills and redness and the
diagnosis of an infection. . ., then the infection would have been controllable
and would not have caused the significant damage that it ended up causing,
including getting into Mr. Gaspard's spine and causing prolonged disability. 


In the concluding section of the report, Ayus opined that if Drs. Hiner and Johnson

 had implemented and followed appropriate infection control standards and
policy, both during the administration of dialysis and when it became apparent
Mr. Gaspard had contracted an infection, and provided Mr. Gaspard the proper
treatment, including wound culture, IV antibiotics, and removal of the graft on
or about December 3, 2004, then the access to the blood stream would have
been prevented for five days and more likely than not the infection would not
have spread throughout Mr. Gaspard's body and caused the severe infection
and resulting injuries he suffered.


 Appellants filed a motion to dismiss that challenged the adequacy of Ayus's report. 
See id. Specifically, appellants contended the report did not "identify defendants by name
on the issues of standard of care, breach of standard of care, and causation[,]" that Ayus did
not provide a factual basis for his opinions, and that the report "does not establish the
specialties and roles of the defendants." After holding an oral hearing, the trial court found
Ayus's report inadequate, but granted Gaspard a thirty-day extension to provide a report that
met the requirements of section 74.351. See id. § 74.351(c).

 Gaspard filed a report by a second expert, David T. Lowenthal, M.D., within the 120-day deadline for filing expert reports. See id. § 74.351(a). (1) In the report, Lowenthal, a
board-eligible nephrologist, stated that Gaspard complained of fever and chills on December
1, 2004, and blood cultures were performed on that date. Lowenthal's report further stated
that on that date, Johnson examined Gaspard, noted that Gaspard's arm was swollen near his
graft, that Gaspard "had infiltration with his last needle stick[,]" and that Gaspard had chills. 
Lowenthal's report explained as follows: "This is significant considering the fact of [sic] Ms.
Gaspard's affidavit that Mr. Gaspard had problems dating at least 2 days before this visit. 
The problems noted in Ms. Gaspard's affidavit are signs and symptoms of infection."

 Lowenthal opined that the standard of care for Johnson was to examine Gaspard, to
note her findings, to obtain blood cultures, and to give an appropriate antibiotic, as well as
"to recognize the significant potential for a major infection in an immuno-compromised
patient such as Mr. Gaspard and follow that patient carefully." According to Lowenthal, the
standard of care also required Johnson "to recognize that the infection was stemming from
the AV graft and assure that the graft was removed promptly to eliminate the spread of the
infection." Lowenthal further opined that the standard of care required hospitalization of
immuno-compromised patients such as Gaspard "to allow for proper antibiotic therapy." 
Lowenthal's report stated that if Johnson had assured that the AV graft was promptly
removed, "the infection would have been avoided with hospitalization and antibiotics."

 Lowenthal noted that on December 3, 2004, Johnson was aware that Gaspard had
redness and swelling, and he further explained, "It is inconceivable to me that any physician
would not immediately hospitalize and mandate the AV graft be taken out after being told
[by another physician] that a patient was systemically infected from the graft." Lowenthal
opined that Johnson fell below the standard of care by not mandating removal of the AV
graft on December 3, 2004, since the graft "was emitting the infection directly into Mr.
Gaspard's blood stream."

 With respect to Hiner, Lowenthal's report explains that another physician's notes
indicate that Hiner was the referring physician, and Lowenthal opines that "we must assume
that both Dr. Johnson and Dr. Hiner had examined [Gaspard] on 12-3-04." In the report,
Lowenthal noted, "Dr. Marisa Johnson and Dr. Hervy Hiner are both nephrologists and I base
my opinions above on what a reasonably prudent nephrologist would do in the same or
similar circumstances." According to Lowenthal, Hiner had a duty to perform a physical
examination of Gaspard, to note his findings, and to order immediate removal of the AV
graft. In the report, Lowenthal explained that Hiner breached the standard of care by failing
to make notes of his physical examination of Gaspard, as well as by not assuring that
Gaspard's AV graft was removed. Lowenthal explained that his "previous statement about
the standard of care and medical causation on 12-3-04 applies equally to Dr. Hiner because
. . . [Gaspard] was referred to [another physician] by Dr. Hiner." Lowenthal's report
concluded as follows:

 Ultimately, Mr. Gaspard had his AV graft removed on 12-8-04. Unfortunately
for Mr. Gaspard, it was too late to eliminate the significant infection which
ultimately le[]d to long term hospitalization and osteomyelitis.

 

 If Dr. Johnson or Dr. Hiner had exercised the standard of care and ordered
removal of the AV graft . . ., Mr. Gaspard's infection could have been
controlled and eliminated in a reasonable period of time and the ultimate
catastrophic infection and osteomyelitis would have been eliminated.


 Attached to Lowenthal's report was an affidavit by Gaspard's wife, Lynda. Both Dr.
Ayus and Dr. Lowenthal stated in their respective reports that they had reviewed numerous
medical records regarding Gaspard, as well as Lynda's affidavit. In the affidavit, Lynda
stated that when she picked her husband up on November 29, 2004, a nurse approached her
and told her that she "'stuck [Gaspard] with the same needle three times.'" Lynda noted that
the next day, Gaspard developed fever and chills, and his arm "was turning red." According
to Lynda's affidavit, she had to pick up Gaspard early from dialysis on December 1 because
he had chills and fever. Lynda also noted that on December 2, Gaspard "was still sick with
chills and fever and his arm was red." According to Lynda, on December 3, 2004, Gaspard
had an appointment with another physician, who determined that "the graft in Pete's arm
could no longer be used because he had an infection in his graft." Lynda averred that
Gaspard was "still getting sick" on December 4-5, and his arm was "very inflamed" and "his
upper back started hurting him." Lynda further explained that on December 6, 2004, another
physician told Johnson to remove the graft, and Gaspard was still suffering from pain "in his
upper back and right shoulder area." Lynda explained that in addition to the December 8
surgery to remove the infected graft, Gaspard required cervical surgery in February of 2005.
Lynda's affidavit began and concluded with a statement that the matters in the affidavit are
within her personal knowledge and are true and correct.

 Appellants objected to Lynda's affidavit, as well as to Lowenthal's report, and re-urged their motion to dismiss. After holding a second oral hearing, the trial court issued a
letter ruling and subsequently entered an order denying appellants' motion to dismiss and
overruling appellants' objections to Lynda's affidavit. Appellants then filed this
interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon Supp.
2006).

Pertinent Law


 We review a trial court's decision regarding the adequacy of an expert report under
an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 877 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles." Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court also abuses its discretion if it
fails to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992).

 A plaintiff asserting a healthcare liability claim must provide each defendant physician
and healthcare provider with an expert report no later than the 120th day after filing suit. 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The statute defines "expert report" as
follows:

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.


Id. § 74.351(r)(6). If a plaintiff furnishes the required report within the time permitted, the
defendant may file a motion challenging the report. See id. § 74.351(l).

 The statute provides that the trial court "shall grant a motion challenging the adequacy 
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Id. When determining whether the report represents a good-faith effort,
the trial court's inquiry is limited to the four corners of the report. Wright, 79 S.W.3d at 52;
Palacios, 46 S.W.3d at 878. To constitute a good-faith effort, the report "must discuss the
standard of care, breach, and causation with sufficient specificity to inform the defendant of
the conduct the plaintiff has called into question and to provide a basis for the trial court to
conclude that the claims have merit." Palacios, 46 S.W.3d at 875.

 When a plaintiff sues more than one defendant, the expert report must set forth the
standard of care applicable to each defendant and explain the causal relationship between
each defendant's individual acts and the injury. See Tex. Civ. Prac. & Rem. Code 
Ann. § 74.351(a), (r)(6) (A claimant must provide each defendant with an expert report that
sets forth the manner in which the care rendered failed to meet the standards of care and the
causal relationship between that failure and the injuries claimed.); Doades v. Syed, 94 S.W.3d
664, 671-72 (Tex. App.--San Antonio 2002, no pet.); Rittmer v. Garza, 65 S.W.3d 718, 722-23 (Tex. App.--Houston [14th Dist.] 2001, no pet.). An expert report may not assert that
multiple defendants are all negligent for failing to meet the standard of care without
providing an explanation of how each defendant breached the standard of care and how that
breach caused or contributed to the cause of injury. Taylor v. Christus Spohn Health Sys.
Corp., 169 S.W.3d 241, 244 (Tex. App.--Corpus Christi 2004, no pet.). Although an expert
report need not marshal and present all of the plaintiff's proof, a report that omits any of the
elements required by the statute does not constitute a good-faith effort. Palacios, 46 S.W.3d
at 878-79.

Issue One


 In their first issue, appellants contend the trial court erred in denying their motion to
dismiss. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). Specifically, appellants argue
as follows: (1) the expert reports do not identify appellants by name and do not address
standard of care, breach of the standard of care, and causation as to each defendant, (2) the
experts do not provide a factual basis for their opinions, (3) Dr. Ayus opines that Johnson
met the standard of care, (4) the experts do not establish that they are qualified to render
opinions regarding each defendant, and (5) the experts' reports are fatally deficient under
Palacios. See Palacios, 46 S.W.3d 873.

 Both Ayus's report and Lowenthal's report identify Hiner and Johnson by name. 
Therefore, appellants' contention to the contrary is incorrect. Neither report mentions STNA
or H.H. Hiner, P.C. by name. Contrary to appellants' assertion, Ayus's report does not state
that Johnson's treatment of Gaspard met the standard of care. Ayus's report states that he
is a nephrologist; that the standard of care is to remove the source of infection immediately
upon diagnosis of infection; that Johnson and Hiner breached the standard of care by failing
to order surgical removal of the graft until five days after Gaspard's infection was diagnosed;
and that this breach of the standard of care caused Gaspard's injury and disability because,
had the graft been removed sooner, the infection "would not have spread throughout Mr.
Gaspard's body and caused the severe infection and resulting injuries he suffered."

 Lowenthal's report states that he is a nephrologist, that both Johnson and Hiner are
nephrologists, (2) and that the standard of care for Johnson was to recognize that the graft was
infected and to insure that the graft was promptly removed to prevent the infection from
spreading. Lowenthal also explained that Johnson breached the standard of care by failing
to order removal of the graft on the day the infection was diagnosed (December 3), and that
if Johnson had not fallen below the standard of care, "the infection would have been avoided
with hospitalization and antibiotics." According to Lowenthal's report, the same standard
of care (i.e. to order immediate removal of the graft) applied to both Johnson and Hiner, 
Hiner breached the standard of care by failing to make notes of his examination of Gaspard
and failing to insure that Gaspard's graft was removed, and Hiner's failure to exercise the
standard of care resulted in "the ultimate catastrophic infection and osteomyelitis. . . ."

 We find that the reports of Ayus and Lowenthal together set forth the applicable
standard of care as to Johnson and Hiner, how each physician breached the standard of care,
and how the breach of the standard of care caused Gaspard's injuries. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(r)(6); Palacios, 46 S.W.3d at 875. The reports set forth the
standard of care applicable to both Johnson and Hiner and explain the causal relationship
between the acts of each physician and Gaspard's injury. See Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(a), (r)(6); Taylor, 169 S.W.3d at 244; Doades, 94 S.W.3d at 671-72. 
Furthermore, with respect to STNA and H.H. Hiner, P.C., Gaspard's claims against those
entities necessarily involve only their vicarious liability for the actions of Johnson and
Gaspard, since professional entities cannot practice medicine. See Univ. of Tex. Sw. Med.
Ctr. v. Dale, 188 S.W.3d 877, 879 (Tex. App.--Dallas 2006, no pet.); In re CHCA Conroe,
L.P., No. 09-04-453 CV, 2004 WL 2671863, at *1 (Tex. App.--Beaumont Nov. 23, 2004)
(orig. proceeding) (mem. op.); Clements v. Conard, 21 S.W.3d 514, 522-23 (Tex. App.--Amarillo 2000, pet. denied). The conduct of STNA and H.H. Hiner, P.C. is not measured
by a medical standard of care; rather, under the facts of this case, their liability is solely
vicarious. See In re CHCA Conroe, L.P., 2004 WL 2671863, at *1. Therefore, Gaspard was
not required to provide an expert report as to STNA and H.H. Hiner, P.C. See id.

 Appellants also complain that the reports of Ayus and Lowenthal do not provide a
factual basis for their opinions. Ayus's report stated that he had reviewed Gaspard's records
from Christus St. Elizabeth Hospital, STNA, Dr. Jeffrey Goldstein, Dr. Erwin Lo, Renal Care
Group, Christus St. Mary Hospital, Dr. Allen Williamson, and a "[h]emodialysis flowsheet." 
Lowenthal's report stated that he had reviewed Gaspard's medical records from the Renal
Care Group, Dr. Goldstein, St. Elizabeth Hospital, and Mrs. Gaspard's affidavit. Both
experts' reports discussed Gaspard's symptoms, such as fever, chills, and redness on his arm. 
Lowenthal's report explains that fever, chills, and redness are signs of infection. Ayus and
Lowenthal both gave a chronological history of Gaspard's infection and its diagnosis based
upon the records they reviewed. Ayus and Lowenthal both note that the infection in
Gaspard's graft was diagnosed on December 3, 2004, yet the graft was not removed until
December 8, 2004, allowing the infection to spread through Gaspard's bloodstream for an
additional five days. We find that each expert's report adequately sets forth the factual basis
for the opinions expressed therein. See generally Palacios, 46 S.W.3d at 875. We overrule
issue one.

Issue Two


 In their second issue, appellants assert that the trial court erred in considering
Lowenthal's report rather than an amended report from Ayus. Section 74.351(i) of the
Medical Liability Act provides as follows:

 [A] claimant may satisfy any requirement of this section for serving an expert
report by serving reports of separate experts regarding different physicians or
health care providers or regarding different issues arising from the conduct of
a physician or health care provider, such as issues of liability and causation. 
Nothing in this section shall be construed to mean that a single expert must
address all liability and causation issues with respect to all physicians or
health care providers or with respect to both liability and causation issues for
a physician or health care provider.


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i) (emphasis added). As discussed above, a
claimant must serve his expert report within 120 days after filing his original petition. Id. 
§ 74.351(a).

 As support for their argument that the trial court improperly allowed supplementation
of Ayus's report with Lowenthal's, appellants cite Danos v. Rittger, No. 01-06-00350-CV,
2007 WL 625816 (Tex. App.--Houston [1st Dist.] Mar. 1, 2007, pet. filed). (3) In Danos, the
First Court of Appeals held that the trial court erred by permitting the plaintiff to cure the
defects in her expert report by filing a report from a second expert after the 120-day deadline
had passed, but during a 30-day extension granted by the trial court. Id. at *3-*4. However,
in the case sub judice, Gaspard filed Lowenthal's report within the 120-day deadline.
Therefore, Danos is inapposite, and the trial court did not err in permitting Gaspard to cure
the deficiencies in Ayus's report by filing Lowenthal's report. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(i). We overrule issue two.

 In their third issue, appellants argue that the trial court erred in overruling their
objections to Lynda Gaspard's affidavit "because her affidavit is incompetent, contains
hearsay, and is based on conclusions, speculation, and assumes facts." As discussed above,
both Ayus and Lowenthal reviewed Lynda Gaspard's affidavit before preparing their reports. 
Appellants cite no authorities that hold that an expert who is preparing a report as required
by Chapter 74 may not review documents that would not be admissible into evidence at trial.
In addition, we note that Chapter 74 provides that any expert reports served "under this
section" are not admissible into evidence and may not be used in "a deposition, trial, or other
proceeding." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(k)(2) (Vernon Supp. 2006). 
Because Chapter 74 prohibits the introduction of expert reports into evidence, the Legislature
likely did not intend that expert reports and the evidence reviewed by experts in preparing
the reports must comply with the rules of evidence. See generally id. Furthermore, assuming
arguendo that the rules of evidence apply to expert reports, Rule 703 provides as follows:

 The facts or data in the particular case upon which an expert bases an
opinion or inference may be those perceived by, reviewed by, or made known
to the expert at or before the hearing. If of a type reasonably relied upon by
experts in the particular field in forming opinions or inferences upon the
subject, the facts or data need not be admissible in evidence.


Tex. R. Evid. 703. Appellants have cited no authorities supporting the proposition that
Lynda Gaspard's affidavit did not supply the type of facts or data reasonably relied upon by
medical experts in preparing the reports required by Chapter 74. We overrule appellants'
third issue and affirm the trial court's judgment.

 AFFIRMED.




 ____________________________

 STEVE McKEITHEN

 Chief Justice


Submitted on August 7, 2007

Opinion Delivered September 6, 2007


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Section 74.351(a) provides: "In a health care liability claim, a claimant shall, not
later than the 120th day after the date the original petition was filed, serve on each party or
the party's attorney one or more expert reports . . . for each physician or health care provider
against whom a liability claim is asserted." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

2. This appeal involves only Gaspard's health care liability claims against Johnson,
Hiner, and the health care entities for which they worked. Ayus and Lowenthal need not
state or address the standards of care, breach, and causation for other specialists who treated
Gaspard. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i) ("Nothing in this section shall
be construed to mean that a single expert must address all liability and causation issues with
respect to all physicians or health care providers. . . ."). 
3. As part of their argument under issue two, appellants assert that section 74.351(i)
"was enacted to address two specific situations[:] suits where there are multiple defendants
who practice in different specialties and suits where the liability expert . . . is not qualified
to render opinions on causation." See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i).
Because appellants failed to cite any authorities that so hold, we do not address this
argument. See Tex. R. App. P. 38.1(h).