COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-300-CV

 

 

JASON MARIS, P.A.-C                                                         APPELLANT

 

                                                   V.

 

TADD HENDRICKS, AS                                                          APPELLEES

INDEPENDENT
EXECUTOR OF THE

ESTATE
OF MELISSA HENDRICKS,

DECEASED,
AND TADD HENDRICKS,

INDIVIDUALLY
AND AS NEXT 

FRIEND
OF JOSHUA AND DANIEL

HENDRICKS,
MINORS, AND

CHARLIE
MORELLO

 

                                              ------------

 

                    FROM
PROBATE COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








In this accelerated,
interlocutory appeal, Appellant Jason Maris, P.A.-C appeals the trial court=s order denying his motion to dismiss the health care liability claims
of Appellees Tadd Hendricks, as independent executor of the estate of Melissa
Hendricks, deceased, and Tadd Hendricks, individually and as next friend of
Joshua and Daniel Hendricks, minors, and Charlie Morello.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(9) (Vernon Supp. 2007). 
In a single issue, Maris argues that the trial court erred by not
dismissing Appellees= claims
because Appellees failed to serve him with an expert report complying with the
requirements of section 74.351 of the civil practice and remedies code.  See id. ' 74.351(a), (b), (r)(6) (Vernon Supp. 2007).  We will affirm.

II.  Factual and Procedural Background








Appellees filed their
original petition on October 12, 2004, alleging a health care liability claim
against Maris, a physician=s assistant who worked for Highland Family Medical Center.[1]  Appellees averred that Maris had removed a
lesion from Melissa Hendricks=s scalp in October 2002 but failed to send it off for appropriate
pathological analysis, Athereby
eliminating any opportunity for [Melissa] to be properly diagnosed and treated
for a malignant condition.@ Melissa sought treatment for a similar mass that developed on her
scalp about a year later, which was removed by a different physician, sent to a
pathology lab, and determined to be Amalignant and significantly progressed.@  Melissa subsequently underwent
Aextensive radical treatment,@ but she died in December 2004.

The parties filed multiple
expert reports and motions to dismiss. 
Appellees first attached the expert report of Rhett K. Fredric, M.D. to
their original petition.  The report did
not mention Maris by name, but it set forth in part a chronology of events as
evidenced by Melissa=s medical
records, the standard of care applicable to the procedure, how the standard of
care had been breached, and a statement of causation.

On November 21, 2005, Maris
filed his first motion to dismiss challenging the adequacy of Dr. Fredric=s expert report.  See id.
' 74.351(l).  Maris
contended that the report did not name him and that Dr. Fredric testified in
his deposition on November 15, 2005, Athat he is not qualified to offer any opinions about physician
assistants as he never worked with one and does not know the law.@  On January 13, 2006, Maris
filed a supplemental motion to dismiss with attached excerpts of Dr. Fredric=s deposition.  Appellees
responded that Maris had waived any objections to Dr. Fredric=s report for failing to object Anot later than the 21st day after the date it was served@ and, alternatively, requested a thirty-day extension pursuant to
section 74.351(c) to cure any deficiency. 
See id. ' 74.351(c).








The trial court conducted a
hearing on Maris=s first
motion to dismiss on January 18, 2006, and found that Dr. Fredric=s report was Ainsufficient
as to@ Maris but granted Appellees a thirty-day extension to cure the
deficiency.  On February 16, 2006, Appellees
filed another expert report signed by Dr. Fredric that named Maris.  Maris conceded during argument in an August
13, 2007 hearing that ADr. Fredric=s affidavit was corrected and fixed by then naming my client as - - by
name. . . .  He was named in
that correcting affidavit . . . .@

Included with Appellees= second supplemental response to a request for disclosure and
designation of experts, which was filed on January 17, 2006, was an expert
report from Sunti Srivathanakul, M.D. 
Dr. Srivathanakul reached the same conclusions as Dr. Fredric regarding
the applicable standard of care, the manner in which the care provided by Maris
failed to meet that standard, and the causal relationship between that failure
and Melissa=s
death.  However, Dr. Srivathanakul Aimploded@ during his
deposition on October 30, 2006, resulting in Appellees= de-designating him as a testifying expert shortly thereafter.








At some point between
December 1, 2006 and August 13, 2007, the trial court Aruled that Dr. Fredric could not testify against Maris due to his lack
of qualifications.@[2]  Thereafter, on March 23, 2007,
the trial court signed an order granting Appellees= motion for leave to designate new experts.  Appellees filed the expert reports of
Terrence Lee Moore, M.D. and Dennis Delasi, P.A.  On May 29, 2007, Maris filed his second
section 74.351 motion to dismiss, arguing in part that the new expert reports
of Dr. Moore and physician=s assistant Delasi were untimely and should be dismissed because they
were filed after the expiration of the section 74.351(a) 120-day deadline,
which section 74.351(a) prohibits.  See
id. ' 74.351(a); see also Danos v. Rittger, No.
01-06-00350-CV, 2007 WL 625816, at *3B4 (Tex. App.CHouston [1st
Dist.] Mar. 1, 2007), rev=d, 2008 WL 1172183 (Tex. 2008).








On August 13, 2007, at the
hearing on Maris=s second
motion to dismiss, Maris argued that Appellees= claims against him should be dismissed because (1) Anow that Dr. Fredric has been stricken from this matter, his report
obviously does not meet the standard under 74.351,@ (2) Appellees de-designated Dr. Srivathanakul as an expert witness, A[s]o therefore, the standard-of-care requirements as an opinion
regarding [Maris] have not been met timely by the plaintiffs,@ and (3) the new expert reports were untimely under Danos.[3]  The trial court denied Maris=s motion to dismiss.  It is from
this interlocutory order that Maris appeals.

III.  Section 74.351 Expert Reports

Like his arguments at the
August 13, 2007 hearing, Maris contends that the trial court erred by not
granting his motion to dismiss because (1) AAppellees served only one report inside the 120-day deadline that
failed to mention Maris and that was from an expert who was unqualified to
testify about the standard of care for a physician=s assistant,@ (2)
Appellees Afiled a
second report outside the [120-day] deadline by an expert who also was
unqualified to offer the opinions regarding the standard of care applicable to@ Maris, and (3) AAppellees= attempt to escape dismissal by serving the reports of two new experts
more than two years past the deadline is not authorized . . . .@  Maris thus argues that
Appellees failed to serve an expert report because the only reports served were
not Aexpert reports@ as defined
by section 74.351(r)(6).  Appellees
respond in part that Maris waived any objections to the sufficiency of the report
by failing to timely assert an objection. 
We agree with Appellees.








A.     Standard of Review

We review a trial court=s ruling on a motion to dismiss under section 74.351 for an abuse of
discretion.  Am. Transitional
Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001).  A trial court abuses its discretion when it
acts in an arbitrary or unreasonable manner or without reference to any guiding
rules or principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).

B.     Section 74.351
Requirements and Standards[4]








Civil practice and remedies
code section 74.351 provides that, within 120 days of filing suit, a plaintiff
must serve expert reports for each physician or health care provider against
whom a liability claim is asserted.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a).  An Aexpert report@ is a
written report by an expert that provides a fair summary of the expert=s opinions regarding the Aapplicable standards of care, the manner in which the care rendered by
the physician or health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages
claimed.@  Id. ' 74.351(r)(6).  AEach defendant physician or health care provider whose conduct is
implicated in a report must file and serve any objection to the sufficiency
of the report not later than the 21st day after the date it was served,
failing which all objections are waived.@  Id. ' 74.351(a) (emphasis added). 
AIf an expert report has not been served within [120 days] because
elements of the report are found deficient, the court may grant one 30-day
extension to the claimant in order to cure the deficiency.@  Id. ' 74.351(c) (emphasis added). 
If, on the other hand, a plaintiff does not serve a timely expert
report, the trial court, on the motion of the affected physician or health care
provider, shall, subject to section 74.351(c), enter an order dismissing the
case with prejudice.  Id. ' 74.351(b).








As stressed by the italicized
portions of the statute above, there is a distinction between an absent report
and a report that is timely but deficient, which consequently affects the
applicability of the twenty-one day waiver provision in section 74.351(a).  See Ogletree v. Matthews, No. 06-0502,
2007 WL 4216606, at *3 (Tex. Nov. 30, 2007) (A[A] deficient report differs from an absent report.@).  When a report is not served
within 120 days after suit is filed, the defendant may file a motion to dismiss
the case, and the trial court has no discretion but to dismiss the case.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(b); Nexion Health at Oak Manor, Inc. v. Brewer,
243 S.W.3d 848, 851 (Tex. App.CTyler 2008, no pet.).  Section
74.351(b) does not contain a deadline by which a defendant physician or health
care provider must complain about the absent report.  Poland v. Grigore, 01-07-00197-CV,
2008 WL 340447, at *9 (Tex. App.CHouston [1st Dist.] Feb. 1, 2008, no pet.).  Consequently, section 74.351(a)=s twenty-one day objection deadline does not apply to an objection to
an expert report based on belated service. 
See id.








Conversely, if a report has
been timely served but does not meet the statutory definition of an Aexpert report@ because the
report has one or more deficiencies in its contents, the trial court may grant
one thirty-day extension to cure the deficiencies; thus, unlike section
74.351(b), dismissal following a defendant=s motion complaining of a deficient, but timely, report is not
mandatory.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(c), (r)(6); Poland, 2008 WL 340447, at *8; Thoyakulathu
v. Brennan, 192 S.W.3d 849, 853 (Tex. App.CTexarkana 2006, no pet.) (ASection 74.351(c) applies only when >an expert report has not been served within= the 120-day period >because elements of the report have been found deficient.=  This clearly requires a timely-served report
that is deficient.@) (emphasis
in original).  By its plain language,
section 74.351(a)=s
requirement that a defendant whose conduct is implicated in a report must file
and serve Aany
objection to the sufficiency of the report not later than the 21st day
after the date it was served@ applies to an objection based on the sufficiency (or deficiency) of a
timely-served report.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a) (emphasis added); Poland, 2008 WL 340447, at *8
(A[T]he >objection to
the sufficiency of the report= in . . . section 74.351(a) means an objection to the report=s substance, not to the timeliness of its service.@).  Consequently, a defendant
physician or health care provider who=s conduct is implicated in a timely-served report must file and serve any
objection to the sufficiency of the report not later than twenty-one days
after the report was served, Afailing which all objections are waived.@  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(a); see also Ogletree, 2007 WL 4216606, at *4B5; Pena v. Methodist Healthcare Sys. of San Antonio, Ltd., 220
S.W.3d 52, 54 (Tex. App.CSan Antonio
2006, no pet.) (holding that twenty-one-day period for defendant health care
provider to object to sufficiency of report not triggered until claimant has
filed both the report and a curriculum vitae of each expert listed in report).








C.     Any Objections to Report=s Sufficiency Waived  

Here, Appellees served Dr.
Fredric=s report on Maris when they filed and served their original petition
on October 12, 2004.  Because Appellees
served Maris with an expert report within 120 days of filing suit, the report
was not an absent report necessitating the mandatory dismissal of Appellees= claims.  See Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(b).  Maris=s argument that the report is no expert report because it did not specifically
name him is an objection and argument directed to the report=s sufficiency.  The question
then is whether Dr. Fredric=s alleged deficient report implicated Maris, triggering the twenty-one
day sufficiency objection deadline of section 74.351(a).  See id. ' 74.351(a).

The report sets forth a
chronology of events as evidenced by Melissa=s medical records.  It stated in
part, 

There
are two different hands describing this visit and the subsequent surgery on
October 21, performed at Highland Family Medical Clinic at which time a 1 cm
mass lesion was removed from Ms. Hendricks= scalp.  There is no indication in the records that
the material removed from her scalp was ever sent for appropriate pathological
analysis.

 








Dr. Fredric opined that the Astandard of care in this case requires submission of all tissue
removed from patients who present with a soft tissue mass for appropriate
pathological analysis.@  He also opined that the applicable standard
of medical care had been breached for A[f]ailing to submit the tissue removed from Ms. Hendricks for
appropriate pathological analysis@ and for A[f]ailing to
diagnose and treat the malignancy present in Ms. Hendricks=[s] body.@  Dr. Fredric further reasoned that AHighland Family Medical Clinic, by and through the acts and omissions
of its staff, failed to meet the applicable standard of medical care or
breached the acceptable standard of medical care.@  He concluded that the Afailure to conform to acceptable standards of medical care proximately
caused the subsequent disability experienced by Ms. Hendricks, and ultimately
will be a proximate cause of her death from metastatic soft tissue sarcoma.@  Maris is the individual who
removed the initial cyst from Melissa=s scalp.








We determine that Dr. Fredric=s report sufficiently implicated Maris=s conduct.  See Palacios,
46 S.W.3d at 876B80
(discussing purpose of requiring expert testimony and report in medical
malpractice cases and stating that report must fulfill statute=s purpose of informing defendant of specific conduct called into
question by plaintiff and providing a basis for trial court to conclude the
claims have merit).  Maris thus had
twenty-one days from the date he was served with the reportCor until November 2, 2004Cto assert his objections to the report, but he did not file his first
motion to dismiss complaining of the report until November 21, 2005, and his
second motion to dismiss until May 29, 2007, many days beyond the
twenty-one-day deadline.  Maris=s sufficiency objection to the report could have been urged within the
statutory twenty-one-day period.  Because
Maris did not assert his sufficiency objections within the twenty-one-day
period, he waived his objections.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 74.351(a).  see also
Ogletree, 2007 WL 4216606, at *4B5.[5]








In light of Maris=s waiver of his sufficiency objections, the trial court=s subsequent determination that Dr. Fredric=s report was Ainsufficient
as to@ Maris and its grant to Appellees of a thirty-day extension to cure
the alleged deficiency was superfluous and procedurally inconsequential, which
Appellees had argued to the trial court. 
Moreover, the filing of Dr. Srivathanakul=s report after the expiration of the 120-day deadline likewise was of
no effect because Appellees timely served Dr. Fredric=s report implicating Maris and Maris waived his sufficiency objections
to the report.  Maris=s arguments relying on Danos, which the supreme court has
reversed, and complaining of the untimely filed new expert reports of Dr. Moore
and physician=s assistant
Delasi are inapposite for the same reasons.













Maris further contends that
Appellees failed to serve a timely report complying with the requirements of
section 74.351(r)(6) because, having determined that Dr. Fredric Acould not testify against Maris due to his lack of qualifications,@ the trial court subsequently struck Dr. Fredric from testifying as an
expert on behalf of Appellees.[6]  Maris confuses a Daubert[7]
motion challenging a testifying expert with a section 74.351-based motion
to dismiss a health care liability claim. 
Nothing in section 74.351 provides that an expert report meeting the
statute=s requirements is invalidated if the expert who signed off on the
report is subsequently struck pursuant to a Daubert challenge, nor has
Maris directed us to any such authority. 
Moreover, the supreme court has stated that the trial court=s inquiry when determining whether the report represents a good faith
effort to comply with the definition of an expert report in section
74.351(r)(6) is limited to the four corners of the report.  Palacios, 46 S.W.3d at 878.  Maris cannot rely on excerpts from deposition
testimony taken long after the filing of an adequate expert report and
allegedly establishing that a designated expert is not qualified to provide
expert testimony because such excerpts are not included within the four corners
of the report.  Finally, accepting Maris=s argument would be inconsistent and incongruous with the goals of
section 74.351 because, as Maris states in his brief, Athe purposes behind the amendments [to the Medical Liability Act]
were, among other things, to remove unwarranted delay and expense, to
accelerate the disposition of non-meritorious cases, and to give hard-and-fast
deadlines for the serving of expert reports.@  Maris=s attempt to dispose with an initial determination that an expert
report satisfies the requirements of section 74.351 after a trial court=s ruling months or years later that the same expert who sponsored the
report is not qualified to testify as an expert is wholly inconsistent with the
Apurpose@ of the
statute. 

We hold that the trial court
did not abuse its discretion by denying Maris=s motion to dismiss Appellees= health care liability claims. 
Accordingly, we overrule Maris=s sole issue.

IV.  Conclusion

Having overruled Maris=s sole issue, we affirm the trial court=s interlocutory order denying Maris=s motion to dismiss Appellees= health care liability claims.

 

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
A:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

DELIVERED:  May 1, 2008











[1]Appellees also asserted claims
against Stephen A. Glaser, D.O. and Highland Family Medical Center, who are not
part of this appeal.





[2]The record does not contain an
order striking Dr. Fredric as an expert witness.  Maris did, however, file a motion to strike
Dr. Fredric on December 1, 2006, and Maris=s counsel stated at an August 13, 2007 hearing that the
trial court had struck Dr. Fredric as an expert, prohibiting him from Atestifying as to standard of care
or breach of duty of care as to [Maris].@





[3]See Danos,
2007 WL 625816, at *3B4. 





[4]The legislature amended section
74.351 in 2005, and the 2005 changes apply as follows:

 

only to a cause of action that
accrues on or after the effective date of this Act [September 1, 2005].  An action that accrued before the effective
date of this Act is governed by the law applicable to the action immediately
before the effective date of this Act, and that law is continued in effect for
that purpose.

 

See Act of May 18, 2005, 79th Leg.,
R.S., ch. 635, ' 2, 2005 Tex. Gen. Laws 1590,
1590 (codified at Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351 (Vernon 2005)).  Because Appellees= cause of action accrued before the
effective date of the current version of section 74.351, the former version of
section 74.351 that was effective for claims filed on or after September 1,
2003 applies, and all references to section 74.351 herein are to that version
of section 74.351.  See Act of
June 2, 2003, 78th Leg., R.S., ch. 204, ' 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005)
(current version at Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351 (Vernon Supp. 2007)).





[5]The cases that Maris relies on to
support his argument that Dr. Fredric=s report was no expert report are all distinguishable or
inapposite, partly because each of the defendants in those cases filed timely
objections to the reports, unlike Maris. 
See Davis v. Webb, No. 14-07-00331-CV, 2008 WL 190054, at
*1B4 (Tex. App.CHouston [14th Dist.] Jan. 22, 2008,
no pet. h.) (holding that expert report of optometrist was no expert report
because only a Aphysician,@ which does not include an
optometrist, may qualify as an expert on the issue of whether a physician
departed from accepted standards of medical care); Cuellar v. Warm Springs
Rehab. Found., No. 04-06-00698-CV, 2007 WL 3355611, at *1B3 (Tex. App.CSan Antonio Nov. 14, 2007, no pet.)
(holding that trial court properly dismissed suit because expert reports of
nurse and Mexican-licensed doctor, neither of whom were Aphysicians,@ were no reports); see also
Austin Heart, P.A. v. Webb, 228 S.W.3d 276, 278 (Tex. App.CAustin 2007, no pet.) (defendant
objected to report); Simonson v. Keppard, 225 S.W.3d 868, 870 (Tex. App.CDallas 2007, no pet.) (defendant
objected to report).

 

We are also mindful of
Justice Willett=s concurring opinion in Ogletree
observing that, in addition to absent and deficient reports, there might be
a third category of expert reports that merits dismissal just like an absent
report:  Aa document so utterly lacking that,
no matter how charitably viewed, it simply cannot be deemed an >expert report= at all, even a deficient one.@ 
See Ogletree, 2007 WL 4216606, at *6 (Willet, J.,
concurring).  Dr. Fredric=s report does not fall within this
classification. 





[6]Maris argued at the August 13, 2007
hearing on his motion to dismiss that Anow that Dr. Fred[]ric has been stricken from this matter,
his report obviously does not meet the standard under 74.351.@ 
And Maris argues, ABecause the trial court struck Dr.
Fredric=s report as to Maris[,]
. . . Appellees never served an >expert report= as defined by the statute.@





[7]See Daubert v. Merrell Dow Pharms.,
Inc., 509 U.S.
579, 113 S. Ct. 2786 (1993).