Wayne DOLCEFINO; KTRK Television, Inc.; Harry Florsheim; ABC, Inc.; CC Texas Holding Co.; and Steve Bivens, Petitioners,

v.

William STEPHENS and Ray Jordan, Respondents.

No. 03–1013.

Supreme Court of Texas.

July 1, 2005.

Rehearing Denied Feb. 3, 2006.

David T. Moran, Charles L. Babcock, Robert P. Latham, Jackson Walker, L.L.P., Dallas, Andrew D. Graham, Jackson Walker, L.L.P., Houston, for petitioners.

Lloyd E. Kelley, Lloyd E. Kelley & Associates, Houston, for respondent.

R. David Broiles, Law Offices of Kirkley Broiles & Berryman, Fort Worth, for Merle Bull.

Justice HECHT, joined by Justice WAINWRIGHT, dissenting from the denial of the petition for review.

During a break in a continuing legal education seminar at a San Antonio hotel on July 10, 1997, four Houston city officials attending the seminar—Controller Lloyd Kelley, Deputy Controller William Stephens, Chief of Police C.O. Bradford, and police sergeant Ray Jordan—lounged beside a buffet table near a corner of a noisy courtyard, standing a foot or two apart, conversing quietly, but making no obvious effort to ensure that they could not be overheard.[1] Two arm-lengths away, secretly recording them with a camera that looked like a pager, was a researcher for Houston ABC–TV affiliate KTRK, Steve Bivens.[2]

KTRK reporter Wayne Dolcefino had been investigating Kelley for several weeks. At first, Dolcefino had been interested in a city contract to resolve "Y2K" matters that he believed the newly elected Kelley had helped steer to his campaign manager, Steven Plumb, who had been paid $26,000 for which he had produced a three-page report.[3] But Dolcefino had also questioned Kelley's work habits, surreptitiously recording him on personal errands during business hours, including spending the afternoon at a water park with a female member of his executive staff and his two children.[4]

Kelley learned of the courtyard recording on July 11, the day after it was made.[5] Dolcefino's reports on the Plumb contract aired a few days later, on July 16, 21, and 22.[6] Dolcefino's report on Kelley's work schedule was broadcast on August 12 and again on August 15, this time including a portion of the courtyard recording showing Kelley, Stephens, and Bradford, but not Jordan.[7] The recording, as broadcast, was

1. 126 S.W.3d 120, 124, 135–136 (Tex.App.-Houston [1st Dist.] 2003).

2. *Id.*

3. *Dolcefino v. Randolph*, No. 14–00–00602–CV, 2001 WL 931112, at *1 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (not designated for publication).

4. *Id.*

5. *Id.* at *11.

6. *Dolcefino v. Randolph*, 19 S.W.3d 906, 914–915 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

7. *Id.* at 923; 126 S.W.3d at 127.

copied from the "pager" camera and did not include any sound the camera may have recorded.[8] The original "pager" recording was recycled or reused, and whether it, or any lost copy of it, contained any portion of the subjects' conversations cannot be determined with certainty.

Kelley sued KTRK, Dolcefino, Bivens, and others, alleging defamation and invasion of privacy under several theories. On August 30, 1999, Kelley added a claim for violation of the Texas Anti–Wiretapping Act.[9] The Act provides that "[a] party to a communication may sue a person who ... intercepts, attempts to intercept, or employs or obtains another to intercept or attempt to intercept the communication".[10] "Communication" is defined as "speech",[11] and "interception" as "the aural acquisition of the contents of a communication ... without the consent of a party to the communication", with certain exceptions.[12] The trial court denied the defendants' motions for summary judgment, but on interlocutory appeal, the court of appeals reversed and rendered judgment for the defendants.[13] The court held in part that Kelley's wiretapping claim was barred by the two-year statute of limitations.[14]

Stephens filed this action against KTRK, Dolcefino, Bivens, and others (collectively "KTRK") on August 26, 1999, four days before Kelley asserted his own time-barred wiretapping claims, and Jordan joined the action a month later.[15] The trial court granted summary judgment for the defendants, and the court of appeals affirmed except for the plaintiffs' wiretapping claim.[16]

KTRK argues that Stephens' and Jordan's claims are barred by limitations. Stephens and Jordan do not dispute that the applicable limitations period is two years, that the courtyard recording made July 10, 1997 was broadcast on August 15, and that they did not sue until more than two years after the broadcast. They argue that KTRK's motion for summary judgment did not defeat the application of the discovery rule to delay accrual of their claims. If the discovery rule applies, limitations does not begin to run until a claimant knows or should know of his injury. But, for the discovery rule to apply, an injury must be inherently undiscoverable—that is, *"by nature* unlikely to be

---

8. 126 S.W.3d at 128.

9. Tex. Civ. Prac. & Rem.Code §§ 123.001–.004.

10. *Id.* § 123.002(a)(1).

11. *Id.* § 123.001(1) (" 'Communication' means speech uttered by a person or information including speech that is transmitted in whole or in part with the aid of a wire or cable.").

12. *Id.* at § 123.001(2) (" 'Interception' means the aural acquisition of the contents of a communication through the use of an electronic, mechanical, or other device that is made without the consent of a party to the communication, but does not include the ordinary use of: (A) a telephone or telegraph instrument or facility or telephone and tele-

graph equipment; (B) a hearing aid designed to correct subnormal hearing to not better than normal; (C) a radio, television, or other wireless receiver; or (D) a cable system that relays a public wireless broadcast from a common antenna to a receiver.").

13. *Dolcefino v. Randolph*, No. 14–00–00602–CV, 2001 WL 931112, at *1 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (not designated for publication).

14. *Id.* at *8–11.

15. 126 S.W.3d at 126; *Dolcefino v. Randolph*, No. 14–00–00602–CV, 2001 WL 931112, at *9 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (not designated for publication).

16. 126 S.W.3d at 138.

discovered within the prescribed limitations period despite due diligence."[17] If the injury is not of this nature, it is immaterial when the claimant knew or should have known of his injury.[18] It may well be, as the court of appeals concluded, that although Stephens saw the broadcast of the courtyard tape, neither he nor Jordan, despite due diligence, discovered for weeks or months that their communications had been recorded.[19] But the applicability of the discovery rule depends on the nature of the injury itself, not on the particular claimant's circumstances. When a video recording has been broadcast on network television in the area in which the claimants reside, I doubt whether the existence of an audio component of the recording, though not broadcast, is inherently undiscoverable. We have emphasized that the discovery rule applies only in "rare cases".[20] I question whether this is one of those cases. The issue is certainly worthy of this Court's consideration.

KTRK also argues that Stephens and Jordan impliedly consented to being recorded because they had no objectively reasonable expectation of privacy in a crowded, public, hotel courtyard. If consent is to be determined by such an objective standard, then there is no need in this case to resolve factual issues, contrary to the court of appeals' conclusion.[21] The predicate facts—the setting, the subjects' movements, the location of the buffet table, the presence of others, the manner in which the subjects conversed—are all clearly reflected in the recording, as the court of appeals explained in more detail,[22] and cannot be disputed. If, however, consent is to be determined by a subjective standard, then it would be important to say so. KTRK argues that the standard and its application must take into account the circumstances of this case: that public figures in a public place are complaining of media defendants' recording of them for news broadcasts. If the Court believes that this is an unjustified intrusion by the press on public figures' legitimate expectations of privacy, or that the matter is one for a jury to decide, these things, too, would be important to say. The standard for determining consent under the Anti–Wiretapping Act and its proper application are issues deserving of the Court's attention.

I would grant the petition for review and set the case for argument.

---

17.  *S.V. v. R.V.,* 933 S.W.2d 1, 7 (Tex.1996) (emphasis added).

18.  *See id.; see also Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 735–737 (Tex.2001).

19.  126 S.W.3d at 128.

20.  *Childs v. Haussecker,* 974 S.W.2d 31, 36 (Tex.1998).

21.  126 S.W.3d at 136.

