Raymon POLAND, Individually and as Independent Administrator of the Estate of Jessie Poland, Robert Martin, and Frank Martin, Appellants

v.

Dr. Alina GRIGORE and Dr. Arthur S. Keats & Associates, Appellees.

No. 01–07–00197–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 1, 2008.

Andrew Lee Payne, Sandrice M. McGlown, Payne & Payne & Associates, Houston, TX, for Appellants.

Cynthia D. Rendon, Melanie Ann Rubinsky, Frank A. Doyle, Tamara M. Madden, Lauren B. Harris, Johnson, Spalding, Doyle, West & Trent, LLP, John R. Strawn, Jr., Chetna Gosain Koshy, Cruse, Scott, Henderson & Allen, L.L.P., Leah Ann Greene, Dale Burrus Frisby, Kroger, Myers, Frisky & Hirsch, Houston, TX, for Appellees.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

TIM TAFT, Justice.

Appellants, Raymon Poland, individually and as independent administrator of the estate of Jessie Poland, Robert Martin, and Frank Martin ("the Poland parties"), appeal from a judgment dismissing their health-care-liability and related claims against appellees, Dr. Alina Grigore and Dr. Arthur S. Keats & Associates. We determine whether the trial court erred in granting appellees' motion to dismiss the claims against them for the Poland parties' failure timely to serve an expert report on them. We affirm.

### Background

The factual recitations come mainly from the Poland parties' petition. Appellant Raymon Poland was the husband of Jessie Poland; the remaining appellants were his natural children. In August 2003, Jessie Poland, under the care of Dr. James Willerson (an appellee in a related appeal) and Dr. Ott (an appellee in another related appeal), was hospitalized at St. Luke's Episcopal Hospital and the Texas Heart Institute (both appellees in another related appeal) for an elective surgical procedure to repair her heart's mitral valve. Appellee Dr. Alina Grigore, who was employed by appellee Dr. Arthur S. Keats & Associates, was the anesthesiologist for the surgical procedure. The Poland parties alleged that, at the time of surgery, Jessie Poland's blood contained a level of Coumadin that the health-care providers should have known rendered her blood fully anticoagulated and, thus, rendered surgery dangerous. The surgery was nonetheless performed; Jessie Poland bled internally; and she died several days later of multisystem organ failure.

In their original and first amended petitions, both of which were filed on October 24, 2005, the Poland parties sued, among other defendants, St. Luke's Episcopal Hospital, the Texas Heart Institute, the University of Texas Health Science Center at Houston, Dr. Arthur S. Keats & Associates, and Drs. Ott, Grigore, and Willerson for Jessie Poland's wrongful death, for her pain and suffering and medical costs before her death, and for her burial expenses. By the time of the trial court's complained-of ruling, the Poland parties had amended their petition two more times to allege the following causes of action or theories of recovery against all defendants, including appellees: (1) negligence, (2) gross negligence, (3) actual and constructive fraud, (4) intentional infliction of emotional distress, (5) assault and battery, (6) intentional and negligent abandonment, (7) breach of fiduciary duties, (8) "negligent breach of fiduciary duties," (9) malpractice, (10) "lack of proper informed consent,"

(11) "tampering with official medical records," (12) "forgery," (13) violations of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"),[1] and (14) conspiracy among all defendants. This "live," third amended petition also added allegations that the defendants had altered Jessie Poland's medical records and forged Raymon Poland's signature on unspecified hospital documents. The Poland parties sought actual and exemplary damages.

Appellees moved to dismiss, under Texas Civil Practice and Remedies Code section 74.351(b), the Poland parties' health-care-liability claims against them for failure to serve an expert report upon them or their attorneys within 120 days of the filing of the claims against them.[2] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2007) (providing that trial court must dismiss health-care-liability claim against defendant if claimant fails to serve expert's report and *curriculum vitae* on that defendant within period specified by section 74.351(a)); Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (providing that claimant must serve each defendant against whom health-care-liability claim is asserted with expert's report and *curriculum vitae* not later than 120 days of claim's filing) [hereinafter, "former section 74.351(a)"], *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a)

(Vernon Supp.2007)). Appellees, like several other defendants, also objected to or moved to strike the Poland parties' live petition to the extent that it attempted to recast health-care-liability claims as other causes of action.

Appellees' motion to dismiss alleged that the Poland parties had served the report of their expert, Dr. Dennis Moritz,[3] on Dr. Grigore's attorney 123 days after their claims had been filed against her and that the Poland parties had never served their report on Dr. Arthur S. Keats & Associates. The motion further asserted an additional, independent basis for dismissing the claims against Dr. Arthur S. Keats & Associates: because the claims against Dr. Arthur S. Keats & Associates were based solely on respondeat superior for Dr. Grigore's actions, the claims against it had to be dismissed when the claims against Dr. Grigore were dismissed for failure timely to serve the expert report on her.

The hearing on appellees' motion to dismiss and their objections to the live petition occurred on July 14, 2006. Other defendants' motions to dismiss, objections to the expert report, and motions to strike the live petition were heard simultaneously. No additional evidence was presented at the hearing. At the hearing, the Poland parties did not deny that they had served Dr. Moritz's May 2, 2005 expert report and *curriculum vitae* ("CV") on appellees' counsel 123 days after the filing of their first amended petition, the petition that

---

1. *See* TEX. BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 2002 & Supp.2007).

2. Before Dr. Arthur S. Keats & Associates had answered or appeared in the suit, Dr. Grigore had separately twice moved to dismiss the claims against her for untimely service of an expert report. She and Dr. Arthur S. Keats & Associates then filed a joint motion to dismiss the claims against them on June 29, 2005, which predated the dismissal hearing. After the dismissal hearing, but before the trial

court had ruled on their June 29 joint dismissal motion, appellees filed another joint dismissal motion on the same grounds. For simplicity's sake, unless it is otherwise necessary to distinguish between appellees' pre-hearing and post-hearing dismissal motions, we refer simply to appellees' "motion" to dismiss.

3. This first unsigned report of Dr. Moritz was dated May 2, 2005.

appellees alleged had triggered the 120–day–service deadline, but instead argued that they had not alleged health-care-liability (or any) claims against either appellee until their second amended petition, which was filed and served along with a second unsigned report of Dr. Moritz, dated May 19, 2006.[4]

On October 30, 2006, the trial court rendered an interlocutory order that, among doing other things, dismissed the claims against appellees with prejudice:

> On July 14, 2006 ... CAME TO BE HEARD all parties, by and through counsel, Dr. Aline Grigore and Arthur S. Keats & Associates' [sic] Motion to Dismiss and Objections to Plaintiff's [sic] Expert Report.... The Court, having considered such Motions and Objections, having reviewed the file herein, and heard the argument of counsel, makes the following FINDINGS OF FACTS and ORDERS:
>
> 1. Plaintiffs ... filed their Original Petition on October 24, 2005. The 120–day deadline by which Plaintiffs were required to serve their expert reports pursuant to Section 74.351 of the TEX. CIV. PRAC. & REM.CODE was February 21, 2006. The earliest date that Plaintiffs served an expert report to any Defendant, after the filing of their lawsuit, was on February 24, 2006.
>
> ...
>
> 6. With respect to Defendants Dr. Alina Grigore and Arthur S. Keats & Associates Plaintiffs served Dr. Alina Grigore and Arthur S. Keats & Associates with an unsigned expert report from Dennis Moritz, M.D., on February 24, 2006. The

> deadline to serve an expert report pursuant to § 74.351 of TEX. CIV. PRAC. & REM.CODE was February 21, 2006. The Court hereby finds that Plaintiff's [sic] expert report was untimely served as to Dr. Alina Grigore and Arthur S. Keats & Associates. The Court further finds that Arthur S. Keats & Associates is a party to the suit under the theory of vicarious liability and because all claims against Dr. Alina Grigore must be dismissed with prejudice due to a failure to provide an expert report, Dr. Alina Grigore and Arthur S. Keats & Associates must also be dismissed. Based on the foregoing, it is ORDERED that Defendants Dr. Alina Grigore and Arthur S. Keats & Associates' Motion to Dismiss and Objections to Plaintiff's [sic] Expert Report [be] GRANTED, and that Defendants Dr. Alina Grigore and Arthur S. Keats & Associates [be and] are hereby DISMISSED with prejudice.
>
> ...
>
> 7. It is further ORDERED that pursuant to Section 74.351 of the TEX. CIV. PRAC. & REM.CODE that ... Defendants Dr. Alina Grigore and Arthur S. Keats & Associates [be] awarded attorney's fees in the amount of $34,373.00.... The collection of these attorney's fees is stayed pending outcome of any interlocutory appeal.

This same order also (1) denied St. Luke's Episcopal Hospital and the Texas Heart Institute's motion to dismiss under Texas Civil Practice and Remedies Code section

---

4. The Poland parties also served a report of a nurse, Rachel Cartwright, on at least some of the defendants in their lawsuit in May 2006. The trial court struck the May 2006 expert report of Cartwright for its having been untimely served. The Poland parties do not complain in this appeal of the striking of Cartwright's report.

74.351 and (2) granted Dr. Ott's motion to dismiss under section 74.351(b). Finally, the trial court signed a separate interlocutory order that granted Dr. Willerson's motion to dismiss based upon Texas Civil Practice and Remedies Code section 101.106. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 2005).

The Poland parties appealed the adverse rulings dismissing all of their claims against Drs. Ott, Willerson, and Grigore and Arthur S. Keats & Associates, and St. Luke's Episcopal Hospital and the Texas Heart Institute appealed the denial of their motion to dismiss—all under the same appellate cause number. Although the interlocutory order appealed by St. Luke's Episcopal Hospital and the Texas Heart Institute was permitted by statute, this was not true of every appealed order. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a) (Vernon 1997 & Supp.2007). On December 18, 2006, this Court, upon the parties' motion, abated the appeal and remanded the cause for the trial court— upon various parties' motions, filed in the trial court after appeal, to sever the interlocutory orders rendered in favor of Dr. Ott, of Dr. Willerson, and of Dr. Grigore and Dr. Arthur S. Keats & Associates—to render final and appealable those interlocutory rulings that had not been appealable on an interlocutory basis. Upon remand, the trial court severed the rulings against the specified defendants from the underlying cause, rendering a final judgment in the newly severed cause numbers involving Dr. Ott, Dr. Willerson, and Dr. Grigore and Dr. Arthur S. Keats & Associates. On March 15, 2007, this Court reinstated the appeal, assigning different appellate cause numbers to the appeal of what had

by then become four separate rulings in four separate trial-court cause numbers. This opinion and judgment concern the Poland parties' appeal of the dismissal order rendered in favor of Dr. Grigore and Dr. Arthur S. Keats & Associates.

## Service on Appellees

In their first issue, the Poland parties argue that the trial court erred in granting appellees' dismissal motion and dismissing their claims against Dr. Grigore with prejudice because they first asserted claims against Dr. Grigore in an amended petition that was filed fewer than 120 days before they served their expert report on her (and Dr. Arthur S. Keats & Associates's) attorney. In their second issue, the Poland parties assert that the trial court erred in dismissing their claims against Dr. Arthur S. Keats & Associates because Dr. Arthur S. Keats & Associates waived any objections to the Poland parties' expert report, including its timeliness, by not having objected within 21 days of the report's (belated) service. Finally, the Poland parties assert that the trial court erred, for various reasons, in awarding Dr. Grigore and Dr. Arthur S. Keats & Associates $34,373 in attorney's fees.[5]

"We generally review rulings on a motion to dismiss under section 74.351(b) for abuse of discretion." *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez,* 237 S.W.3d 869, 871 & 871 n. 1 (Tex.App.- Houston [1st Dist.] 2007, pet. filed); *accord Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

---

5. The trial court dismissed all of the Poland parties' claims against Dr. Grigore and Dr. Arthur S. Keats & Associates, even those couched as something other than health-care-liability claims. However, the Poland parties do not complain on appeal of the dismissal of these additional claims. We thus do not consider whether the trial court properly dismissed the claims couched as anything other than health-care-liability claims.

## A. Dismissal of Claims Against Dr. Grigore

The version of section 74.351(a) that applies to this case provides as follows concerning service of the expert report and CV:

### § 74.351. Expert Report

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

*See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. The statute continues:

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

In their first issue, the Poland parties do not dispute that they did not serve Dr. Grigore's counsel with their expert's report within 120 days of their first amended petition's filing. Rather, they argue that the first amended petition did not allege health-care-liability (or any) claims against Dr. Grigore (or against Dr. Arthur S. Keats & Associates) and that they "for the first time" alleged that Dr. Grigore "was directly and vicariously [sic] liable ... for the surgery that lead [sic] to Jessie Poland's death" in their second amended petition, which was filed on May 19, 2006, fewer than 120 days before they served their expert report on appellees' counsel.

■ The appellate record undisputedly refutes the Poland parties' factual representations and argument. The first amended petition, filed on October 24, 2005, alleged in pertinent part as follows:

COME NOW Plaintiffs ..., complaining of [various defendants and] ... *Dr. Alina Grigore, Arthur S. Keats, M.D., Associates* [sic], ..., who *for cause of action,* would respectfully show the following:

II.

This suit is brought under and by virtue of the law of the State of Texas to recover those damages that Plaintiffs are justly entitled to receive as compensation for the wrongful death of Jessie Poland *which was brought about directly and proximately by reason of the negligence of the Defendants herein,* as set out more fully hereinafter.

. . .

III.

Plaintiffs would show that Jessie Poland was under the care of Drs. James Willerson and David Ott, who hospital-

ized Jessie Poland in order to perform an elective medical procedure in August, 2003. While Mrs. Poland had been taking Coumadin prior to her admission, *the Defendants* herein were well aware of that fact and indeed, had her check into the hospital sometime before the surgery was to take place to monitor her chemical blood levels, knowing that it was dangerous and risky to perform surgery on an individual who was prescribed this particular drug. Nonetheless, despite *Defendants'* actual knowledge of Mrs. Poland's anticoagulation levels as they existed on the morning of the surgery, Drs. Willerson, and Ott, *together with anesthesiologist Dr. Alina Grigore, who was acting in the course and scope of her employment, for Dr. Arthur Keats, M.D., Associates [sic]*, proceeded to operate. Mrs. Poland's anticoagulation levels, resulting from the prescribed Coumadin, were well known *to these Defendants*, as well as to [various other defendants].... *All of the Defendants* should have prevented the surgical procedure from going forward with Mrs. Poland's Coumadin and anticoagulation levels being what they were and *the Defendants were negligent in proceeding with the surgery under these facts and circumstances.*

*As a result of performing surgery* on Mrs. Poland at the time of her elevated Coumadin levels, she suffered a regrettably predictable series of medical complications that ultimately led to her death on August 20, 2003. *The negligence of the Defendants* in performing the procedure constituted a proximate cause of the wrongful death of Jessie Poland.

### IV.

. . .

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that *the De-* *fendants* be duly cited to appear and answer herein, and that Plaintiffs have judgment against *Defendants,* jointly and severally . . . .

(Emphasis added.)

Former section 74.351(a) requires that the report and CV be served not later than the 120th day after the date that *"the claim* [is] filed." *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (emphasis added), *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. In section 74.351, "claim" means "health care liability claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(2) (Vernon Supp.2007). "Health care liability claim," in turn, is defined in chapter 74 as "a cause of action against a . . . physician for the treatment, lack of treatment, or other claimed departure from accepted standards of medical care . . . which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (Vernon 2005).

The allegations in the first amended petition quoted above meet this definition because they allege a cause of action (negligence) against appellees (and all defendants) for the treatment of Jessie Poland, as well as their departure from the accepted standards of medical care in that treatment, which proximately resulted in Jessie Poland's death. The 120–day deadline to serve the expert report and CV on appellees was thus triggered by the filing of the first amended petition that contained the above allegations. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590; *Poland v. Ott,* No. 01–07–00199–CV, slip op. at 12,

— S.W.3d ——, ——, 2008 WL 257382 *5 (Tex.App.-Houston [1st Dist.] Jan. 31, 2008, no pet. h.) (holding that filing of health-care-liability claim against particular defendant triggers start of 120–day period in which to serve former section 74.351(a) expert report and CV on that defendant, regardless of whether report and CV were provided to defendant before filing date). That petition was filed more than 120 days before the Poland parties served the report and CV on either appellee. Accordingly, the trial court did not abuse its discretion in dismissing with prejudice the claims against Dr. Grigore; indeed, the statute *required* that the court do so. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

The Poland parties nonetheless urge that they did not allege a health-care-liability claim against Dr. Grigore until their second amended petition because that later petition contained, allegedly for the first time, "specific causes of action against [Dr. Grigore], for direct and vicarious liability pre-operation." The gist of the Poland parties' assertion appears to be that no health-care-liability claim was asserted against Dr. Grigore (or either appellee) until more specific factual allegations were asserted in the second amended petition.

We disagree. First, as demonstrated above, the first amended petition clearly alleged a health-care-liability claim against Dr. Grigore (and both appellees). This was all that was required for the 120–day expert-report deadline to start running because the statute requires simply that each physician "against whom a [health-care-]liability claim is asserted" be served no later than 120 days after "the [health-care-liability] claim" is filed. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. The statute does not tie the obligation to serve the report and CV to the specificity of the allegations supporting the health-care-liability claim against a physician or health-care provider; that is, if the claim asserted against such a defendant fits the definition of a health-care liability claim, then the expert-report service obligation is triggered. Moreover, it is commonplace to amend a petition's allegations against a particular defendant to render them more specific as more facts become known about the complained-of occurrence. "[T]he purposes behind former section 74.351(a)'s adoption were, among other things, to remove unwarranted delay and expense, to accelerate the disposition of non-meritorious cases, and *to give hard-and-fast deadlines for the serving of expert reports.*" *Campbell,* 222 S.W.3d at 797. The goal of creating hard-and-fast deadlines for service of expert reports would be completely undermined if parties had to guess how detailed the allegations in support of a health-care-liability claim had to be before the service requirement was triggered. Neither the plain language of former section 74.351(a), nor the legislative purpose behind it, supports such a reading. *See Gutierrez,* 237 S.W.3d at 873 (providing, in construing former section 74.351(a), that "[s]tatutes must be construed as written, and legislative intent determined, if possible, from their express terms" and that "[e]ven if a statute is unambiguous, courts may consider the statute's objective; circumstances of its enactment; its legislative history; ... [and] consequences of a particular construction....").

We hold that the trial court did not abuse its discretion in dismissing the Poland parties' claims against Dr. Grigore. We thus overrule the Poland parties' first

issue.[6]

## B. Dismissal of Claims Against Dr. Arthur S. Keats & Associates

■ The reasons set out above also demonstrate that the trial court did not abuse its discretion is dismissing with prejudice the claims against Dr. Arthur S. Keats & Associates. However, in their second issue, the Poland parties nonetheless argue that the trial court abused its discretion in dismissing their claims against Dr. Arthur S. Keats & Associates because this appellee waived any objection to the expert report and CV by not having objected within 21 days of having been served with them.

Former section 74.351(a) establishes the following procedure after an expert report and CV have been served:

> Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection *to the sufficiency of the report* not later than the 21st day after the date it was served, failing which all objections are waived.

*See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (emphasis added), *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. The plain language of former section 74.351(a) provides that a defendant whose conduct is implicated in an expert report need object only to the report's *sufficiency* within the 21–day period.

The term "sufficiency" as used in former section 74.351(a)'s 21–day–objection deadline does not mean timeliness, as can be seen from other parts of section 74.351. For example, section 74.351(c) permits the trial court to allow the claimant a one-time extension to cure the objected-to deficiency in the expert report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c) (Vernon Supp.2007) ("If an expert report has not been served within the period specified by Subsection (a) *because elements of the report are found deficient,* the court may grant one 30–day extension to the claimant in order to cure the deficiency.") (emphasis added). Section 74.351(c) necessarily establishes the procedure for challenges other than those based on belated service— for instance, objections to deficiencies in the report's content—because once a report is late, it remains late: no "cure" exists to render an untimely report timely. *See Herrera v. Seton Northwest Hosp.,* 212 S.W.3d 452, 460 (Tex.App.-Austin 2006, no pet.) ("[S]ection 74.351(c) . . . permits [30–day] extensions for expert reports that the court finds deficient in substance, not for reports that are filed untimely.");

---

**6.** We distinguish *Puls v. Columbia Hospital at Medical City Dallas Subsidiary, L.P.,* on which the Poland parties rely. *See* 92 S.W.3d 613 (Tex.App.-Dallas 2002, pet. denied). In *Puls,* the plaintiff filed a claim based on a perfusionist's negligence, for which it alleged that the hospital-employer was vicariously liable, in its original petition; in an amended petition, the plaintiff added claims based on nurses' negligence, for which it also alleged that the hospital-employer was vicariously liable. *See id.* at 615. The expert report concerning the nurses' negligence was served within 180 days of the amended petition's filing (the deadline at that time), but more than 180 days from the original petition's filing. *See* *id.* The perfusionist was nonsuited. *See id.* The *Puls* court rejected the hospital's contention that the expert report concerning the nurses' actions was untimely because it had been served more than 180 days from the filing of the original petition, in which the hospital had first been made a party through vicarious liability for another employee's actions: the claim against it for vicarious liability based on different employees' actions was a new "claim." *See id.* at 617–18. Here, in contrast, the Poland parties *actually alleged health-care-liability claims* against each appellee in their first amended petition, simply embellishing those claims in later amendments.

*Thoyakulathu v. Brennan,* 192 S.W.3d 849, 853 (Tex.App.-Texarkana 2006, no pet.) ("Section 74.351(c) applies only when 'an expert report has not been served within' the 120–day period *'because elements of the report have been found deficient.'* This clearly requires a timely-served report that is deficient.") (emphasis in original; citation omitted; quoting TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c)).

Likewise, section 74.351(*l*) provides that the trial court "shall grant a motion challenging *the adequacy* of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*) (Vernon Supp.2007) (emphasis added). "[A] motion challenging the adequacy of an expert report" (section 74.351(*l*)) is the equivalent of an "objection to the sufficiency of the report" (section 74.351(a)). *See, e.g.,* RANDOM HOUSE WEBSTER'S UNABRIDGED DICT. at 24 (2nd ed.2001) (providing that "adequate" and "sufficient" are synonyms). Therefore, section 74.351(*l*)'s procedure applies to former section 74.351(a)'s objection. That procedure refers to section 74.351(r)(6), which, in turn, defines an expert report in terms of its content. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(5)(6) (Vernon Supp. 2007). Accordingly, the "objection to the sufficiency of the report" in former section 74.351(a) means an objection to the report's substance, not to the timeliness of its service. Former section 74.351(a)'s 21–day deadline thus does not apply to an objection to an expert report based on belated service.

In contrast, section 74.351(b)—which establishes the consequences for failure timely to serve an expert report—contains no deadline by which a defendant physician or health-care provider may complain. *See id.* § 74.351(b). Dr. Arthur S. Keats & Associates's complaint was that it was not timely served any report at all, not that a timely served report was deficient. This kind of complaint is not subject to the 21–day–objection deadline of former section 74.351(a).[7]

---

7. *See Ogletree v. Matthews,* No. 06–0502, —— S.W.3d ——, ——, 2007 WL 4216606, at *4–5 (Tex. Nov. 30, 2007) (appearing implicitly to accept petitioner's position that total failure to serve expert report would not require defendant's objection within 21–day window, although rejecting petitioner's complaint that insufficient report was, in effect, no report at all and thus holding that petitioner had waived objections thereto); *Francis v. Select Specialty Hosp.,* No. 01–04–01186–CV, 2005 WL 2989489, at *3 (Tex.App.-Houston [1st Dist.] Nov. 3, 2005, no pet.) (memo. op.) ("[B]ecause there is no evidence in the record that Sharon filed her expert report with the trial court or otherwise provided Select Specialty with an expert report, the 21–day deadline by which a health care provider must file and serve its objections to the sufficiency of such a report was not triggered."); *Smith v. Hamilton,* No. 09–07–128–CV, 2007 WL 1793754, at *4 (Tex.App.-Beaumont June 21, 2007, no pet.) (memo. op.) ("[A] health care defendant's 21–day deadline explicitly refers to an 'objection to the sufficiency' of an expert report, not to the fact that an expert report was not served within the mandatory 120–day deadline.") (memo. op.); *see also Empowerment Options, Inc. v. Easley,* No. 09–06–148–CV, 2006 WL 3239527, at *4 (Tex.App.-Beaumont Nov. 9, 2006, pet. denied) (memo. op.) (noting in dictum that "[c]hapter 74 imposes no deadline for filing a motion to dismiss" for failure timely to serve an expert report); *Packard v. Miller,* No. 07–06–0454–CV, 2007 WL 1662279, at *2 (Tex.App.-Amarillo, May 31, 2007, pet.denied) (memo. op.) (holding that defendant who waited almost 18 months to move to dismiss health-care-liability claim asserted against him for failure timely to serve expert report was not equitably estopped from seeking dismissal because "[t]he Legislature did not include an explicit deadline for the filing of a motion to dismiss" under section 74.351); *cf. Pena v. Methodist Healthcare Sys. of San Antonio, Ltd.,* 220 S.W.3d 52, 53–54 (Tex.App.-San Antonio

We hold that the trial court did not abuse its discretion in dismissing the Poland parties' claims against Dr. Arthur S. Keats & Associates. We thus overrule this portion of the Poland parties' second issue.[8]

**Award of Attorney's Fees to Appellees**

Under their second issue, the Poland parties argue that the trial court erred in awarding $34,373 in attorney's fees to appellees because

> [t]here has been no hearing on attorney [sic] fees. [The Poland parties] were denied the opportunity to cross-examine [appellees] on attorney fee [sic]. The attorney fees for both Dr. Alina Grigore and Dr. Arthur S. Keats & Associates are one combined figure, not detailing any particular amount for either. Appellees have failed to meet the standard as set forth above,[[9]] which must be adhered to, in their requests for attorney fees.

The record shows the following. In their June 29, 2006 joint motion to dismiss and objection to the Poland parties' second amended petition, appellees requested attorney's fees totaling $34,373 for Dr. Grigore and Dr. Arthur S. Keats & Associates together. No affidavit was attached to the motion in support of the requested fees. The hearing on appellees' June 29 joint

motion occurred on July 14, 2006. At that hearing, counsel for appellees expressly asked for attorney's fees under section 74.351, though no amount was mentioned. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b)(1) (requiring trial court to award "to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider" when court grants dismissal motion based on claimant's failure timely to file expert report). It appears, however, that an affidavit supporting "costs" was tendered to the court at that hearing:

> Counsel for appellees: I would also—I failed to file the affidavit for costs. If I may file that with the Court....

On August 16, 2006, while their June 29 joint motion was pending and more than a month before the court would rule on it, appellees filed another joint motion that raised the same arguments and requested the same relief as the as the June 29 joint motion had. The August 16 joint motion again requested $34,373 in attorney's fees for Dr. Grigore and Dr. Arthur S. Keats & Associates together, but this time attached the affidavit of their trial counsel, Dale Burrus Frisby, in support:

> Attorney [sic] fees incurred by Kroger, Myers, Frisby & Hirsch during the course of responding to Plaintiff's [sic]

---

2006, no pet.) (holding that section 74.351(a)'s 21–day objection deadline did not apply to timely served expert report that was unaccompanied by CV because failure timely to serve CV rendered service of entire report untimely).

8. Given our disposition, we need not determine if the trial court properly dismissed the Poland parties' claims against Dr. Arthur S. Keats & Associates because the claims against it were based on respondeat superior for Dr. Grigore's actions and Dr. Grigore was properly dismissed for failure timely to serve an expert report.

9. The Poland parties rely on Texas Disciplinary Rule of Professional Conduct 1.04(b), which establishes factors that may be considered in determining a fee's reasonableness, and on the opinion of the El Paso Court of Appeals in *Marquez v. Providence Memorial Hospital*, in which the court adopted the factors of rule 1.04. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005) (STATE BAR R., art. X, § 9); *Marquez v. Providence Mem'l Hosp.*, 57 S.W.3d 585, 596 (Tex.App.-El Paso 2001, pet. denied).

Petition ... are ... on behalf of Dr. Alina Grigore and Arthur S. Keats & Associates [sic], the amount of $34,373.00.

That affidavit was dated July 14, 2006, the same date as the hearing on appellees' June 29 joint motion to dismiss; it is unclear whether this affidavit was a copy of the affidavit for "costs" to which appellees' counsel referred and that he tendered at the July 14 hearing. The trial court signed the order granting appellees' motion to dismiss, which also awarded appellees their attorney's fees, on October 30, 2006.

■ First, the Poland parties have provided absolutely no briefing or argument to support the following appellate challenges concerning attorney's fees: "[t]here has been no hearing on attorney [sic] fees. [The Poland parties] were denied the opportunity to cross-examine [appellees] on attorney [sic] fee. The attorney fees for both Dr. Alina Grigore and Dr. Arthur S. Keats & Associates [sic] are one combined figure, not detailing any particular amount for either." We decline to consider these challenges because they are inadequately briefed. *See* Tex.R.App. P. 38.1(h); *Stephens v. Dolcefino*, 126 S.W.3d 120, 130 (Tex.App.-Houston [1st Dist.] 2003), *pet. denied*, 181 S.W.3d 741 (Tex.2005).

Additionally, the Poland parties did not object below to the attorney's fees award on any of the grounds asserted on appeal—either during the July 14 hearing, when appellees' counsel appears to have tendered an affidavit of "costs"; during the month and a half between the time that appellees' filed their August 16 joint motion, which attached the complained-of affidavit, and the court signed the dismissal order that awarded fees; or after that order was rendered. These types of challenges must be preserved to be asserted on appeal. *See* Tex.R.App. P. 33.1(a)(1);

*City of San Antonio v. Longoria*, 04-04-00063-CV, 2004 WL 2098074, at *4 (Tex. App.-San Antonio Sept. 22, 2004, no pet.) (memo. op.) (holding that following complaints concerning attorney's fees were waived for not having been raised in trial court: "the affiants did not state they are licensed attorneys in good standing in the State of Texas; no evidence was presented regarding their reputation, experience, or abilities; a foundation for the affiants to testify on the reasonableness of their fees was not established; and there is no evidence the fees are reasonable in Bexar County, Texas or that two attorneys were necessary at an arbitration.").

We overrule this portion of the Poland parties' second issue.

### Conclusion

We affirm the judgment of the trial court.

We deny appellees' request for sanctions on appeal.