

**NUMBER 13-07-00278-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ANTHONY ROGERS, **Appellant,**

**v.**

THE CITY OF MCALLEN, **Appellee.**

**On appeal from the 332nd District Court of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Garza**

Appellant, Anthony Rogers, challenges the trial court's judgment in favor of appellee, the City of McAllen (the "City"). Upon being terminated from his employment as Fire Chief, Rogers sued the City seeking a declaratory judgment that the City failed to comply with the Texas Open Meetings Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (Vernon 2008); TEX. GOV'T CODE ANN. § 551.001-.146 (Vernon Supp. 2007). The City counterclaimed, requesting declaratory relief and attorney's fees. After a bench trial, the trial court ruled in favor of the City. By two issues on appeal, Rogers claims that, as a matter of law, the City failed to give proper notice of the McAllen City Commission (the

"Commission") meeting during which the decision was made to terminate him. By three issues, Rogers contests the trial court's award of attorney's fees to the City. We affirm.

## I. BACKGROUND

Rogers was hired by the City as its Fire Chief in November 2001. In October of 2002, Rogers became embroiled in a controversy involving a list created by the McAllen Fire Department (the "Fire Department") of properties to be inspected for fire and building code violations. Almost all of the properties listed were owned by a single City Commissioner, leading to suspicions that the list was created specifically to target that individual. Rogers initially told City Manager Mike Perez, who was investigating the matter, that he did not know who created the list; in fact, Rogers did know who created the list. Upon learning of Rogers' false statement, Perez asked that the Commission take action regarding Rogers' employment. Subsequently, the City provided Rogers with notice of the October 28, 2002 Commission meeting, which included the following agenda item: "Consideration and Action relating to the employment of the Fire Chief."

Having been notified that the Commission was going to consider termination of his employment, Rogers called a press conference prior to the October 28, 2002 meeting to plead his side of the story. At the meeting, scores of fire department employees and advocates of Rogers protested in his support. The Commission decided to temporarily suspend Rogers from his duties as Fire Chief. As part of the terms of the suspension, Rogers was forbidden from communicating with the Fire Department. Rogers was also placed on one year of probation, during which he was required to acknowledge Perez's and the Commission's authority over him, to follow Perez's instructions, and to keep Perez informed.

However, Rogers repeatedly contacted and gave directions to Fire Department staff, including the acting chief, during his suspension. Moreover, when he returned from suspension, he often disregarded Perez's instructions. Nearly a year after Rogers returned

2

from serving his suspension, the Commission listed the following as item number 9(E) on the agenda for its September 22, 2003 meeting:

> Consideration and Action regarding request by Chief Rogers to meet with City Commission to discuss the investigation conducted by the Civil Service Commission and consideration and possible action regarding Chief Rogers'[s] job performance and employment.

This agenda item was listed under "Executive Session," after the "End of Public Hearing." Rogers received a copy of the agenda on September 19, 2003, after which he wrote to the McAllen City Secretary asking that the "discuss[ion] of the investigation conducted by the Civil Service Commission" be removed from the agenda.

At the September 22, 2003 Commission meeting, the commissioners considered the issue of Rogers's employment with the City. The commissioners held an executive session, then returned to an open session and gave Rogers an opportunity to speak regarding his job performance and employment. Subsequently, Perez recommended that Rogers's employment be terminated, and the commissioners unanimously approved the recommendation.

On May 5, 2004, Rogers sued the City, seeking a declaratory judgment that the City failed to comply with the notice requirements provided in the Texas Open Meetings Act, and requesting attorney's fees.[1]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004; TEX. GOV'T CODE ANN. § 551.142.  Specifically, Rogers contended that the notice provided by the City of the agenda for the September 22, 2003 meeting did not expressly state that the Commission would consider terminating his employment.  On May 24, 2004, the City filed an original answer and counterclaim for declaratory judgment, seeking a declaration that its notice complied with the provisions of the Open Meetings Act and requesting attorney's

---

[1] In his original petition, Rogers also sought back pay and benefits, as well as future pay and benefits, as damages resulting from his termination.  However, this is not the type of relief afforded under the Open Meetings Act.  *See* TEX. GOV'T CODE ANN. § 551.142 (Vernon 2004) (providing that "[a]n interested person . . . may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.").  Rogers later amended his petition to seek reinstatement through injunctive or mandamus relief.  *See id.*

fees.

A bench trial took place on November 14, 2005.[2] After the parties provided post-trial briefing, the trial court found in favor of the City and awarded the City $20,000 in trial attorney's fees, along with $32,000 in attorney's fees if the case is appealed to this Court, $10,000 if a petition for review is filed with the Texas Supreme Court, and $18,000 if the supreme court orders briefing. The trial court entered findings of fact and conclusions of law on March 27, 2007. Rogers filed a motion for new trial with the trial court on March 2, 2007, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). Rogers filed his notice of appeal on May 3, 2007.

## II. DISCUSSION

### A. Open Meetings Act

By his first issue, Rogers contends that the notice provided by the City of the September 22, 2003 meeting was insufficient as a matter of law under the Texas Open Meetings Act. By his second issue, Rogers claims that the "evidence adduced at trial did not support a finding that the notice provided by the City and contained in the City Commission agenda of September 22, 2003 met the requirements for an 'open meeting,' as that term is defined under Texas law." We construe Rogers's second issue as a challenge to the legal sufficiency of the evidence supporting the trial court's judgment, and we consider Rogers's first two issues together.

#### 1. Standard of Review

We review a trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards applied when reviewing evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Barrera v. Hondo Creek Cattle Co.*, 132 S.W.3d 544, 547 (Tex. App.–Corpus Christi 2004, no pet.). The trial court's

___

[2] Prior to trial, the parties agreed to separate the Open Meetings Act claims from the competing claims for attorney's fees.

4

conclusions of law are given a de novo review on appeal, and these legal conclusions will be upheld unless they are erroneous as a matter of law. *Barrera*, 132 S.W.3d at 547 (citing *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 121 (Tex. App.–Corpus Christi 1999, pet. denied)).

Rogers bore the burden of proof in the trial court to show that the City's notice did not meet the requirements of the Open Meetings Act. *See Dodd v. City of Beverly Hills*, 78 S.W.3d 509, 514 n.4 (Tex. App.–Waco 2002, pet denied); *Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 697 (Tex. App.–San Antonio 1998, pet. denied)*.* When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, that party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); W. Wendell Hall, *Standards of Review in Texas*, 29 St. Mary's L.J. 351, 481-82 (1998)). In reviewing such a challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, we will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The issue should be sustained only if the contrary proposition is conclusively established. *Id.* (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)).

### 2.    Applicable Law

Section 551.002 of the Texas Government Code provides that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." Tex. Gov't Code Ann. § 551.002; *see id.* § 551.001(3)(C) (defining "governmental body" as, inter alia, "a municipal governing body in the state"). Section 551.041 states that "[a] governmental body shall give written notice of the date,

hour, place, and subject of each meeting held by the governmental body." *Id.* § 551.041.[3]

Generally, as long as a meeting notice alerts the reader to the topic for consideration, it is not necessary for the notice to state all of the consequences which may flow from consideration of the topic. *Cox Enters., Inc. v. Board of Trustees*, 706 S.W.2d 956, 958 (Tex. 1986); *see Sokolow v. City of League City*, 37 F.Supp.2d 940*,* 946-47 (S.D. Tex. 1999). However, when the topic is of special interest to the public, the description must be more detailed, and must provide "reasonable specificity of the subject matter to be considered." *Cox,* 706 S.W.2d at 959 (citing Op. Tex. Att'y Gen. No. H-1045 (1977)). Moreover, "as public interest in a matter increases, a correspondingly more detailed description of the subject under consideration must be given." *Rettberg v. Tex. Dep't of Health*, 873 S.W.2d 408, 411 (Tex. App.–Austin 2004, no pet.) (citing *Cox*, 706 S.W.2d at 959; *Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex. App.–Corpus Christi 1990, writ denied)).

In *Cox*, the Texas Supreme Court found that the word "personnel" was insufficiently specific to notify the public of the selection of a new school superintendent. 706 S.W.2d at 959*.* The court, noting that the "[s]election of a new school superintendent is not in the same category as ordinary personnel matters," found that more specificity was needed in order to provide "full and adequate" notice to the public under the Open Meetings Act. *Id.*; *see Salazar v. Gallardo*, 57 S.W.3d 629, 633-34 (Tex. App.–Corpus Christi 2001, no pet.); *Point Isabel*, 797 S.W.2d at 187.

The Waco Court of Appeals has held that, as a matter of law, the public has a

---

[3] The Texas Supreme Court has articulated the policy underlying this statute thusly:

> Our citizens are entitled to more than a result. They are entitled not only to know what government decides but to observe how and why every decision is reached. The explicit command of the statute is for openness at every stage of the deliberations. Accordingly, we have demanded exact and literal compliance with the terms of this statute.

*Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990) (citing *Smith County v. Thornton*, 726 S.W.2d 2, 3 (Tex. 1986)).

"special interest in jobs of the Fire Chief and the Fire Captain." *Markowski v. City of Marlin*, 940 S.W.2d 720, 726 (Tex. App.–Waco 1997, pet. denied) (citing *Mayes v. City of De Leon*, 922 S.W.2d 200, 203 (Tex. App.–Eastland, 1996, writ denied) (holding that the job of a police chief was of special interest to the public because of "the broad contact with the public that those duties involve")).

### 3. Analysis

The City does not dispute that Rogers's employment as Fire Chief was a matter of "special public interest" and therefore that the notice of the September 2003 City Commission meeting was required to be more specific that of an "ordinary personnel matter." *See Cox*, 706 S.W.2d at 959.[4]

Rogers argues that the City's notice of the meeting was insufficient, in part because it "did not include the term 'disciplinary action' or the word 'termination'" in the agenda notice, "nor did it separate [Rogers's] alleged 'request' to discuss the Civil Service investigation with the City Commission from the distinct issue of taking disciplinary action against [Rogers]."[5]  However, the City was only required to provide "reasonable specificity of the subject matter to be considered" at the meeting. *See Cox*, 706 S.W.2d at 959.  The notice was reasonably specific in that it stated that the Commission might take "possible action regarding Chief Rogers's job performance and employment."

Moreover, Rogers testified that the City's notice of the October 2002 City Commission meeting agenda provided sufficient notice to him that the commission might terminate his employment at that meeting.  However, that notice was, if anything, less

---

[4] The City concedes that it was required to "specifically state the position—Fire Chief—or the individual—Appellant—whose employment is the subject of the agenda item."

[5] Deputy City Attorney Kevin Pagan testified that he composed the first part of agenda item 9(E)—"Consideration and Action regarding request by Chief Rogers to meet with City Commission to discuss the investigation conducted by the Civil Service Commission"—with the understanding that Rogers had, in fact, requested such a meeting.  It was only after he crafted this first part of the agenda item that he learned that City Manager Perez "was going to recommend disciplinary action and likelihood [sic] recommend that he be terminated."

specific than the notice regarding the September 2003 meeting. Rogers's contention that the September 2003 notice did not sufficiently inform the public of the possibility that he might be terminated as Fire Chief is therefore unfounded.

Rogers further contends that the matter of his potential termination was of such public importance that it required a notice with specificity beyond that which is required under *Cox*. *See Cox*, 706 S.W.2d at 959; *Rettberg*, 873 S.W.2d at 411 (stating that "as public interest in a matter increases, a correspondingly more detailed description of the subject under consideration must be given"). To support this contention, Rogers relies heavily on the large display of public support for him at the October 2002 meeting. Perez testified that 125 to 150 people appeared at that meeting in support of Rogers and that there was picketing outside of City Hall during the meeting. Perez noted that this level of public concern was rare, and that it was unprecedented for such heavy public turnout and picketing to also be accompanied by a press conference. Rogers cites Perez's testimony in support of his claim that "public interest in possible disciplinary action against *this* Fire Chief rose to an entirely new level."

Even if we were to agree that the "entirely new level" of public concern for Rogers in October 2002 mandated a stricter notice requirement than that elucidated in *Cox*, the record does not reflect that this level of concern persisted until September 2003. The October 2002 meeting was held at a time that the fire investigation controversy was a focus of significant public interest. In contrast, the September 2003 meeting and its agenda item regarding Rogers's employment related solely to Rogers's alleged failure to comply with the terms of his probationary period. It is also noteworthy that it was Rogers himself who organized the October 2002 press conference and rallied his supporters to attend the October 28, 2002 meeting. No such organization was evident in 2003. Therefore, we agree with the trial court that, although there was significant media attention and public interest paid to Rogers's employment in October 2002, the public did not have an

8

exceptionally high interest in Rogers's employment status in 2003 as would warrant an stricter notice requirement.

Moreover, assuming *arguendo* that the potential termination of Rogers's employment was a matter of "special public interest" as late as September 2003, *see Markowski*, 940 S.W.2d at 726, we find that the City's notice was sufficient under the Open Meetings Act. Specifically, we concur with the trial court's finding of fact that the notice "plainly states that the Commission would consider and possibly act upon Rogers'[s] employment[,] . . . plainly communicates to the public [that] the subject matter of the discussion would be Rogers'[s] employment as Fire Chief . . . [and] clearly implicates the issue of possible termination of that employment." We further conclude that there was legally sufficient evidence to support the trial court's findings of fact and that its conclusions of law were not erroneous. *See Barrera*, 132 S.W.3d at 547; *see also Dow Chem. Co.*, 46 S.W.3d at 241. Accordingly, Rogers's first two issues are overruled.

## B. Attorney's Fees

By his third and fourth issues, Rogers alleges that there was insufficient evidence to support the trial court's award of attorney's fees to the City. By his fifth issue, Rogers contends that the trial court improperly overruled his objections to the attorney's fees affidavits filed by the City.

### 1. Standard of Review

In cases brought under the Open Meetings Act, the trial court has the discretion to award "costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails." TEX. GOV'T CODE ANN. § 551.142(b). "In exercising its discretion, the court shall consider whether the action was brought in good faith and whether the conduct of the governmental body had a reasonable basis in law." *Id.* Additionally, the trial court has the discretion to award reasonable and necessary attorney's fees in cases brought under the Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.

CODE ANN. § 37.009 (Vernon 2008); *Roberson v. City of Austin*, 157 S.W.3d 130, 137 (Tex. App.–Austin 2005, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 328, 241-42 (Tex. 1985). Under this standard, we may not substitute our own judgment for the trial court's judgment. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

Under an abuse of discretion standard, legal insufficiency of the evidence is not an independent reversible ground of error but is a relevant factor in assessing whether the trial court abused its discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *see Weingarten Realty Investors v. Harris County Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (op. on reh'g). We also review a court's ruling on the admission of evidence for abuse of discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *see also Sadoskas v. Sadoskas*, No. 13-02-216-CV, 2003 Tex. App. LEXIS 6211, at *3 (Tex. App.–Corpus Christi July 17, 2003, no pet.) (mem. op.). Therefore, we consider Rogers's third, fourth, and fifth issues together.

## 2. Analysis

On July 31, 2006, the trial court held a hearing during which the parties presented arguments and evidence regarding attorney's fees. At this time, the City filed affidavits by Raymond Cowley and Renee McElhaney, two of the City's trial attorneys, regarding attorney's fees. The trial court based its award of trial attorney's fees solely on Cowley's affidavit; it based its award of appellate fees solely on McElhaney's affidavit. Following the City's production of the affidavits at the hearing, Rogers's trial counsel made the following objection:

> Your Honor, we object to the affidavit on a number of grounds. First of all, we believe it's hearsay. There has been no testimony in this case as to attorney's fees. If counsel wishes to seek attorney's fees, he has the obligation to show that they are reasonable and necessary. I don't believe that's been done in this case.

10

Secondly, under the request for disclosures, which were propounded upon the City of McAllen and which were responded to by the City of McAllen – and I'll provide the Court, if I may, with a copy of these disclosures. Mr. Cowley indicated under the expert provision of those disclosures that he would be testifying as to reasonable and necessary attorney's fees. It's highlighted, I believe, on the fourth page of the disclosures.

He also testified that a reasonable fee for a board certified labor lawyer would be $200.00. He said the issues in this case were neither novel nor complex and that a non[-]board[-]certified attorney in labor and employment would be billed out at $300.00 an hour. The hours that are set forth in the affidavit are significantly higher than that if you go through them. He has not indicated whether any of these attorneys, other than himself, are board certified in labor and employment law.

He also did not provide these documents which presumably were available at the time of trial pursuant to the request for disclosure which he would have been required to do to rely upon them, so we object on that basis as well.

Rogers first contends on appeal that the trial court should not have considered McElhaney's affidavit because McElhaney was not disclosed as an expert witness in response to Rogers's request for disclosure.[6] The City argues that Rogers waived this issue by not raising it in the trial court. We agree.

In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection or motion, state the specific grounds therefor, and obtain a ruling. TEX. R. APP. P. 33.1(a); *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991); *Poland v. Grigore*, 249 S.W.3d 607, 618 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (challenges concerning attorney fee awards must be preserved to be asserted on appeal);

---

[6] Texas Rule of Civil Procedure 193.6(a) provides as follows:

A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

(1)    there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2)    the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a).

11

*see Thomas v. State*, 226 S.W.3d 697, 704-05 (Tex. App.–Corpus Christi 2007, no pet.) ("The objection made at trial must mirror the contention on appeal or the point of error will be waived.").

Rogers's counsel did not object at trial to McElhaney's affidavit on the grounds that she was not disclosed as an expert witness. Although Rogers's counsel did address the fact that Cowley was disclosed as an expert witness with regard to appellate fees, he did not complain that McElhaney had not been so disclosed. *See* TEX. R. APP. P. 33.1(a)(1)(A) (objection in trial court must "state[] the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"). Moreover, although Rogers's counsel objected to the City's failure to produce the affidavits in response to Rogers's request for disclosure, he did not object specifically that McElhaney's affidavit was inadmissible because she was not disclosed as an expert. We conclude that Rogers has waived this argument. *See* TEX. R. APP. P. 33.1(a).

Rogers further argues that the trial court erred in considering either affidavit because they contained inadmissible hearsay. However, affidavit testimony is sufficient to serve as proof that attorney's fees are reasonable and necessary. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b) (Vernon 2008) ("Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.").[7] Rogers's hearsay argument is without merit because he never filed a controverting affidavit. *See id.*

---

[7] Section 18.001(d) of the Texas Civil Practice and Remedies Code provides that "[t]he party offering the affidavit in evidence or the party's attorney must serve a copy of the affidavit on each other party to the case at least 30 days before the day on which evidence is first presented at the trial of the case." TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(d) (Vernon 2008). The City produced its attorney's fees affidavits to Rogers on June 21, 2006, which was more than thirty days prior to July 31, 2006, the date the affidavits were first presented to the court.

We conclude that the City's affidavits constituted sufficient evidence to support the trial court's award of trial and appellate attorney's fees to the City. We further conclude that the trial court did not abuse its discretion in awarding such fees. *See Beaumont Bank*, 806 S.W.2d at 226. Accordingly, Rogers's third, fourth, and fifth issues are overruled.

### III. CONCLUSION

Having overruled Rogers's five issues on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 21st day of August, 2008.

13